Carrolyn L. GEDEON, Now known as
Carrie L. Rose, Petitioner-Appellee,

v.

William J. GEDEON,
Respondent-Appellant.

No. 79SA398.

Supreme Court of Colorado.

June 1, 1981.

Rehearing Denied June 22, 1981.

Tallmadge, Tallmadge, Wallace & Hahn, P. C., Edward J. Walsh, Jo Ann Weinstein, Denver, for petitioner-appellee.

George A. Hinshaw, Aurora, Stuart S. Keown, Westminster, for respondent-appellant.

LEE, Justice.

Appellant, William J. Gedeon, appeals an order of the Denver District Court recognizing certain money judgments from the State of New Mexico under the Uniform Enforcement of Foreign Judgments Act (the Act), section 13–53–101 *et seq.*, C.R.S. 1973, and denying a motion to dismiss the action. We affirm.

This case is the result of a long and complicated series of actions which arose out of the divorce of William J. Gedeon (father) from Carrolyn L. Gedeon (mother) and the child custody decree resulting from that proceeding. The divorce decree and child custody order were entered in April of 1978 in the Arapahoe County District Court, which ordered that the daughter of the couple was to be placed in the custody of the mother and the son in the custody of the father. Liberal visitation privileges were granted. Prior to the grant of the final decree of divorce, the mother moved to New Mexico. However, she stipulated and consented to the continuing jurisdiction of the Arapahoe County District Court in the matter of child custody.

In August 1978, the son visited his mother in New Mexico, as required by the terms of the Colorado custody decree. During this visitation period, the mother filed suit in the District Court of Bernalillo County, New Mexico, seeking permanent custody of both children. That court granted temporary custody of the children to the mother.

The father appeared by counsel and challenged the jurisdiction of the New Mexico court, citing the Arapahoe County District Court order and the stipulation of the mother consenting to the continuing jurisdiction of the Colorado court. During the pendency of the New Mexico action, the father, through his attorneys, filed a motion to dissolve the order granting temporary custody of the children to the mother, which was denied by the court. The father counter-petitioned for an order awarding custody of both children to him.[1] He also moved for summary judgment based upon the pendency of the Colorado action.

During the course of the New Mexico proceeding, negotiations were carried on by the parties and their attorneys to settle the custody controversy. The negotiations resulted in a stipulated Order of Custody, Visitation and Support, entered by the court on December 13, 1978. The order granted joint custody in both parties, with the primary physical custody in the mother. The order spelled out with particularity the visitation arrangements with the father in Colorado, provided for support for the minor children, and terminated alimony payments to the mother. It specifically noted the agreement of the parties to be bound by its provisions concerning custody, visitation and support both in the New Mexico action and the Colorado action.

The children subsequently visited with the father in Colorado for Christmas. He refused to return the children to the mother after the legal visitation had ended. On December 27, 1978, the father filed an affidavit in the New Mexico court, charging that his New Mexico counsel had stipulated to the order of child custody without authorization and that the order was therefore invalid.[2]

---

1. On December 7, 1978, the father filed a petition for a writ of prohibition in the New Mexico Supreme Court to prevent the Bernalillo County District Court from further hearing the matter. A temporary stay was granted by one Justice of the New Mexico Supreme Court, but was voluntarily dissolved by the petitioner on December 11, 1978, before the matter was heard by the entire New Mexico Supreme Court.

2. The record contains specific findings of fact by the New Mexico court that the father was present and participated in the negotiations that resulted in the Order of Custody, Visitation and Support and was aware of and agreed to the material provisions of the stipulated order of court.

On January 5, 1979, the New Mexico court entered an order to show cause why the father should not be held in contempt for violation of the December 13, 1978, custody agreement.[3] The New Mexico court found, contrary to the father's affidavit of December 27, 1978, that his New Mexico counsel had in fact been authorized to enter into the custody agreement. On January 8, 1979, the New Mexico court found the father in contempt and entered a judgment in favor of the mother in the amount of $3,750 for her attorney's fees, for the father's willful failure to obey the order of December 13, 1978, and for the Guardian Ad Litem's fees. In addition, the court imposed a continuing civil contempt fine on the father of $500 for each day, after January 12, 1979, that he failed to return the children to the mother's custody. The opportunity was afforded the father to purge himself of the continuing contempt and fine simply by returning the children to the mother. He did not choose to do so. On February 12, 1979, and again on March 13, 1979, the New Mexico court entered judgment on portions of the accrued fines. The fines for January 12 to January 31, 1979, were reduced to judgment in the total amount of $10,000.

On May 2, 1979, authenticated copies of the judgments of the New Mexico court were filed in the District Court of Denver under the provisions of the Act. Notice of the filing was mailed to the father at his last two known addresses. Within the ten-day time limit set by the Act,[4] the father filed a motion to dismiss. This motion was subsequently denied after hearing, as was the father's motion to alter or amend the judgment or, in the alternative, for relief from the judgment. The father appeals from the order of the Denver District Court recognizing the New Mexico judgments and challenges the constitutionality of the Act itself.

## I.

The appellant-father contends the court erred in recognizing the New Mexico judgments under the Act. The Act provides that any foreign judgment, which is entitled to full faith and credit in the courts of this state, shall have the same effect as a judgment of a court of this state when filed according to the procedures set out in the Act. Section 13–53–103, C.R.S.1973. Appellant contends that the New Mexico judgments are not entitled to full faith and credit under the United States Constitution, Article IV, section 1, for two reasons: first, he asserts that the New Mexico court did not have personal jurisdiction over him; and, second, he argues that the New Mexico judgments were not final judgments.[5] *See Tucker v. Vista Financial Corp.*, 192 Colo. 440, 560 P.2d 453 (1977) and *Gruber v. Wallner*, 198 Colo. 235, 598 P.2d 135 (1979).

## A.

■ Appellant argues that the New Mexico court had no personal jurisdiction over him. This contention is not supported by the record, which clearly indicates that he both personally and through his counsel had been intimately involved in the proceedings in New Mexico from their beginning. Immediately after the custody action was filed in New Mexico, appellant, through his coun-

3. In the meantime, the father had started proceedings again in the Arapahoe County District Court seeking to have that court enforce its original order of custody. An original proceeding was filed in the Colorado Supreme Court by the mother, seeking a writ of prohibition and mandamus prohibiting the Arapahoe County District Court from exercising jurisdiction in the matter. That writ was denied. On a motion to dismiss in the Arapahoe County District Court, that court found as a matter of law that the father had submitted to the jurisdiction of the New Mexico court and that, therefore, it (the Arapahoe County District Court) now lacked jurisdiction over the proceedings. The

proceedings in the Arapahoe County District Court were dismissed on December 12, 1979. That action is presently on appeal to the Colorado Court of Appeals.

4. Section 13–53–104(3), C.R.S.1973.

5. There may be many other reasons why foreign judgments are not entitled to full faith and credit. *See generally Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940) and *Vennum v. Holmberg*, 51 Colo. 306, 117 P. 169 (1911) 47 *Am.Jur.2d Judgments* §§ 1221, 1222 (1969).

sel, moved to dismiss the action. He later filed a counter-petition in that action, seeking custody of both children. He was personally involved in negotiations which led to the ultimate custody decree. By these actions, appellant knowingly and voluntarily submitted to the jurisdiction of the New Mexico court.[6] He purposely availed himself of the privilege of conducting activity within the forum state, thus invoking the benefit and protection of its laws. *Hanson v. Denkla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■ Appellant also claims that the New Mexico judgments are not entitled to full faith and credit because he was never personally served with the orders surrounding the contempt proceedings. It should be noted at the outset that appellant was represented by counsel at each of the hearings involving the contempt orders and fines although he was not personally present. Therefore, he cannot claim that he was not actually notified of the proceedings and that the New Mexico court had no jurisdiction to enter the contempt order. Moreover, a child custody proceeding is a continuing process in which the court retains jurisdiction over the parties. *Quintana v. Quintana*, 45 N.M. 429, 115 P.2d 1011 (1941) and *see* 1978 N.M.Stat. Ann. § 40–4–7(C).

We hold that the New Mexico court had personal jurisdiction over the appellant, both to enter the stipulated Order of Custody, Visitation and Support and to deal with his noncompliance with that order.

#### B.

■ Appellant also contends that the judgments of the New Mexico court are not final and, therefore, are not entitled to full faith and credit. *Gruber, supra.* Once more, the record does not support this claim.

The record shows that the liability for attorney's fees, the original contempt fine, and the Guardian Ad Litem's fee was determined by the court by the order of January 8, 1979, and made final and collectible without opportunity for any adjustment or purge by subsequent actions of the appellant. Similarly, $5,000 of the civil fines were reduced to judgment on February 19, 1979, and were specifically ordered "not subject to review or adjustment." Another $5,000 was reduced to judgment and ordered to be final in the same manner on March 13, 1979.

Appellant points to language in the orders of February 19 and March 13, which ordered that "all further matters be and hereby are continued," as evidence that the money judgments of those dates are not final. This argument is also without merit. Properly construed, this provision of the orders pertains only to other matters contained in the ongoing dispute. It is clear that the fines were reduced to final judgments and are not modifiable.[7] Therefore, the judgments are entitled to full faith and credit.

#### II.

■ Appellant also challenges the constitutionality of the notice provisions of the Act. The Act requires only that the judgment debtor be notified by mail at his last known address. Appellant claims that the procedure of entering the judgment without formal notice or the requirement of a hearing is an unconstitutional taking of property without due process of law. *See Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). We do not agree.

*Fuentes, supra,* and its progeny required only that *pre-judgment* garnishment and attachment procedures comport with the strict requirements of due process notice

---

**6.** On October 19, 1979, appellant filed in the New Mexico court a Rule 60(b) N.M.R.C.P. motion to vacate the custody decree. In this motion he as much as admits that the New Mexico court had jurisdiction over him in the custody proceedings.

**7.** Appellant has filed a motion to have the custody order overturned under Rule 60(b), N.M.R.C.P. By the terms of the rule itself, this motion does not affect the finality of the judgment or suspend its operation.

and hearing. This action involves a *post-judgment* procedure. The basic requirements of notice and hearing have been met by the New Mexico court which rendered the original judgment. The appellee seeks merely to enforce her judgment against her ex-spouse.

It is not entirely clear what precisely due process requires by way of procedures for post-judgment filings such as this.[8] However, when the creditor's interest in collecting a valid judgment is balanced against the debtor's interest in keeping his property, which has already been protected by prior notice and hearing, in our view, the due process requirements of the United States Constitution, *amend.* XIV, are satisfied by the procedures of the Act. The Act requires that notice be mailed to the last known address of the debtor and that there be a ten-day stay of execution. The Act also has liberal provisions for an additional stay of enforcement of the judgment and for further hearings. While these procedures may not comply with the strict requirements of *Fuentes, supra,* those procedures are not required in post-judgment proceedings. *See Dunham, Post Judgment Seizures: Does Due Process Require Notice and Hearing?* 21 S.D.L.Rev. 78 (1976). We find that the procedures of the Act amply protect the appellant's due process rights. *Bittner v. Butts,* 514 S.W.2d 556 (Mo.1974).

The judgment is affirmed.

---

**8.** *Compare Endicott Johnson Corp. v. Encyclopedia Press, Inc.,* 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924) with *Griffin v. Griffin,* 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946). *See also Betts v. Tom,* 431 F.Supp. 1369 (D. Hawaii 1977), for a discussion of the inconsistencies between those two decisions and their effect on due process analysis in the post-judgment remedy area.