196 N.J. Super. 109 (1984)
481 A.2d 602
IN THE MATTER OF THE APPLICATION OF JOSEPH MICHAEL THOMAS ROSSELL, BY HIS NATURAL PARENT AND GUARDIAN, MARIE C. YACONO, FOR LEAVE TO ASSUME THE NAME OF JOSEPH MICHAEL YACONO.
Superior Court of New Jersey, Law Division Burlington County.
Decided June 12, 1984.
*110 D. Neil Manuel for plaintiff.
Robert D. Vetra for Thomas Rossell.
HAINES, A.J.S.C.
Marie Yacono and Thomas Rossell were married on February 14, 1980. A son, Joseph Michael Thomas Rossell, was born on August 29, 1981. The marriage went badly. Thomas Rossell, an angry and violent man, frequently intimidated and abused his wife. On one occasion, he threatened to throw his son out the window. The family's principal financial support was furnished by his wife; he worked infrequently. The marriage ended in a separation on June 30, 1982 and a divorce on December 14, 1982. Joseph has been in his mother's custody ever since.
*111 During the marriage, Thomas was rarely at home, and therefore spent little time with his son. Since the separation, he has seen his son only twice: once, for half an hour, on the occasion of Joseph's first birthday, August 29, 1982, and again, for only five minutes, during Christmas in 1982. Since then, he has not called, has not visited, has sent no cards, has provided no support, and has had no contact of any kind with his son.
Marie, as an incident of the divorce, resumed her maiden name. She now seeks a judgment changing her son's name from Rossell to Yacono. Since her son is always with her, she believes he should share her name. She believes that Thomas, because of his behavior, has no right to object. Inferentially, she suggests that it will be less awkward for her son, if he shares her name as he grows older.
Thomas objects to the change. He denies any episodes of violence, but his testimony is not convincing. He claims that Marie provokes his anger; as a consequence he has not visited his son. He says: "I have never been in jail and do not intend to be". He objects to the name change on the ground that Joseph is his son, that he loves him and that the change of name will cause the loss of certain benefits normally payable to a fireman's son. This opinion, rendered after both parties have testified, concludes that Marie Yacono's application should be granted. It is written because our courts have rarely addressed the issue although many name change applications are filed in our courts[1] and because it disagrees with the leading case on the subject.
The earliest New Jersey decision dealing with a contested name change application involved divorce proceedings: Bruguier v. Bruguier, 12 N.J. Super. 350 (Ch.Div. 1951). In that case, a father sought to restrain his infant daughter from assuming the surname of his former wife's new husband. The action was *112 dismissed on the ground that the daughter, who was of high school age, had changed her name voluntarily and that nothing in the common law prohibited her from doing so.
In Sobel v. Sobel, 46 N.J. Super. 284 (Ch.Div. 1957), a second case, the court held:
The legal name of a child born in lawful wedlock is the child's Christian name and the surname of his natural father, and where the mother has been awarded custody, there is no authority for her to change the surname of the child to that of the mother's subsequent husband, unless there are extenuating circumstances. [at 287]
Consequently, the court ruled that where the natural father was not in default in contributing to the support of his children and was not charged with improper conduct, the divorced wife with legal custody of the children had no authority to change their surnames to that of her second husband. In reaching its decision, the court stated:
The court in dealing with the custody of a child has broad discretion, being always aware that the welfare and happiness of the child is the controlling consideration. There may be occasions when it would be desirable to make an informal change in the name of the child to the surname of the mother's second husband, as when the child's father indulges in improper conduct, fails to support, abandons the child, is indifferent to its welfare and fails to make a timely objection to the change of name. However, when the father contributes to the support of the child, expresses an abiding interest in the child and acts promptly in the objection to the change of name, the court must consider all the factors that would be for the welfare of the child. [Sobel, supra, 46 N.J. Super. at 287.]
In W. v. H., 103 N.J. Super. 24 (Ch.Div. 1968), the court permitted a change. The father had pled guilty to having sexual intercourse with his eleven year old daughter, for which offense he had been sentenced to prison. Previously, he had impregnated his older daughter resulting in the birth of a child. The court found that the actions of the father caused physical, psychological and emotional damage to the children warranting the change of name.
The latest decision, and the only one providing a thorough consideration of the underlying questions, is In re Lone, 134 N.J. Super. 213 (Law Div. 1975). In that case, the court denied a mother's application to change her son's name to that of his *113 step-father when the father objected. It recognized the two basic principles controlling such applications: (1) the child's welfare and happiness and (2) the presence or absence of "extenuating circumstances". The opinion, however, centered upon the claimed psychological effects of a name change.
It noted that prior cases had recognized the supposed principle, expressed in Sobel, supra, that, in the absence of "extenuating circumstances" a father has a "right to expect his kin to bear his name". 46 N.J. Super. at 287. In W. v. H., supra, a presumption was recognized favoring "the father's right to have his progeny bear his name". The Lone court rejected this principle because it related only to the father's welfare, not the child's. However, the importance of maintaining the father's name as a means of strengthening the father-child relationship was considered "highly relevant" and the possible effects of a change were noted:
The apprehensions which reasonably arise as to the possible effects of a name change, like the contrary apprehensions expressed by plaintiff, are persuasive and serious. A change of name imposed upon a child could represent to him a rejection by his father; or evidence that his father is deserving of rejection or contempt; or an attempt by his mother to deceive him as to his true identity; or a statement by his mother and stepfather that his true identity is a shame and embarrasment to them and others. Such consequences could be enormously harmful to the child. They are, of course, conjectural, but no less so than are the "pshchological implications" foreseen by plaintiff. [In re Lone, supra, 134 N.J. Super. at 221]
The court then concluded:
"The realities are that the child's present name represents his identity, his paternity and a remaining bond with his father. There is no sound basis to conclude that any tampering with these realities would advance the best interests of the child." [Id. at 221.]
It is here that I am obliged to part company with Lone. The principle which it espouses denies equality. The right of the father to have his child bear his name is no greater than the right of the mother to have her child bear her name. The deference which Lone accords the father is a deference rooted in antiquity. It echoes fortunately disappearing sexual values. It is still the legally unnecessary custom in our society for a *114 woman to adopt her husband's surname upon marriage. Children, without their knowing participation and usually with little thought on the part of the parents, then receive the same name. Considerations of fame, fortune, culture and aesthetics, which may make a mother's name decidedly more attractive to a child, are universally ignored. The automatic establishment of the father's name obviously removes a serious potential conflict between father and mother but does so at the cost of the mother's identity. This masculine usurpation of authority is permitted to continue if the principles advanced by Lone are recognized.
Those principles, on analysis, obviously apply to the mother with as much force as they do to the father. This becomes obvious if the language of Lone is parroted. A child whose name is not changed may feel rejected by the mother's resumption of her maiden name (lost by marriage custom) or the mother's assumption of the surname of a new husband (acquired in order to provide a family setting for the child). Mother may be considered "deserving of rejection or contempt" for the failure to share her new name with her child. That same failure may be construed to be "an attempt by his mother to deceive him as to his true identity", namely, the child of his mother. It may be considered "a statement by his mother and step-father that his true identity is a sham and embarrassment to them and others". It certainly could be concluded "that the realities are that the ... [mother's] name represents the ... [child's] identity, his ... [maternity] and a remaining bond with his ... [mother]".
The emergence of women as equals of men in our society may be our most significant revolution. The acceptance of that emergence is grudgingly slow; it is an acceptance which the courts must not impede. Names, as this case clearly illustrates, are intimately involved with the status of women. Rules of law for changing names cannot be premised upon unacceptable theories of inequality. The right of a mother to *115 have her child bear her name must be recognized as equal to that of the father.
Other courts have reached this conclusion. In In re Marriage of Schiffman, 28 Cal.3d 640, 169 Cal. Rptr. 918, 630 P.2d 579 (1980), the court held:
We conclude that the rule giving the father, as against the mother, a primary right to have his child bear his surname should be abolished. Henceforth, as in parental custody disputes, the sole consideration when parents contest a surname should be the child's best interest. Expressions to the contrary in [prior cases] are disapproved.
Under the test thus revised the length of time that the child has used a surname is to be considered. If, as here, the time is negligible because the child is very young, other facts may be controlling. For instance, the effect of a name change on preservation of the father-child relationship, the strength of the mother-child relationship, and the identification of the child as part of a family unit are all pertinent. The symbolic role that a surname other than the natural father's may play in easing relations with a new family should be balanced against the importance of maintaining the biological father-child relationship. The embarrassment or discomfort that a child may experience when he bears a surname different from the rest of his family should be evaluated. [Id. at 169 Cal. Rptr. 922-923, 630 P.2d 579]
In Jacobs v. Jacobs, 309 N.W.2d 303 (Sup.Ct.Minn. 1981), the court held that neither parent has a superior right to determine the initial surname of their child and that the child's best interests should govern the resolution of the question as to which surname should be given. In Laks v. Laks, 25 Ariz. App. 58, 540 P.2d 1277 (Ct.App.Ariz. 1975), the court, while deciding against the mother on factual grounds, found merit in the argument that the customary use of the father's surname was the result of the subservience of women and that failure to recognize the equal interest of the mother in her children's surname would result in a classification impermissibly based upon sex.
In the present case, for the reasons stated, I hold that there is no presumption favoring the father's right to have his child retain his name. On the contrary, that right is no different than the mother's. Extenuating circumstances must therefore be considered. There is little difficulty in finding them in this case. The child is less than two years old. He has lived *116 with his mother almost exclusively since his birth. He is too young to have achieved any significant identification with his last name. His father's interest in his welfare has been so modest as to be non-existent. His father's behaviour while married to his mother exhibited little regard for the loving and considerate treatment which children have a right to expect from their father and he has provided no proof that his behavior has changed. Under the circumstances, Joseph Michael Thomas Rossell will be better served in this life if he carries his mother's name. The application for the change of name is therefore granted.
NOTES
[1] Eleven name change applications per Motion Day has been the average in Burlington County over a 5 month period in 1984.