JUSTICE BARZ,
dissenting:
I dissent. The majority has determined that the District Court did not abuse its discretion when it determined that the best interest of the child was to retain his father’s surname. I agree that the proper test to be applied in this case is what is in the best interest of the child, however, I maintain that the District Court abused its discretion when applying this test.
In this case, the District Court cited the father’s acknowledgment of paternity, his payment of $100 per month in child support, and his purported plans to seek a court order granting him visitation rights with the child as the basis for dismissing the petition and determining that it was not in the child’s best interest to change his name. These three factors, however, do not even touch upon the child’s best interest. Instead, these factors merely reinforce traditional notions regarding the “proper” surname for a child. When viewed from a different perspective, these three factors could also be used to justify changing the child’s surname to that of the mother’s, as the mother has acknowledged maternity, she more than likely pays over $100 per month in supporting the child, and she has assumed the day to day responsibility and care for the child.
This Court has only had the opportunity to address this issue in two other instances. See, In re Marriage of Overton (1983), 207 Mont. 292, 674 P.2d 1089; In re Marriage of Firman (1980), 187 Mont. 465, 610 P.2d 178. These type of cases, however, are likely to *144 arise with more frequency as people, and women in particular, question this society’s customs and traditions regarding surnames. This Court should therefore set forth clear guidelines that a district court could use when confronted with a petition to change a child’s surname. These guidelines should naturally be based on the child’s best interest and not the best interest of the mother or the father of the child.
Other jurisdictions have touched upon this subject and have set forth factors that a court should consider in determining a child’s best interest when confronted with a petition to change the child’s name. Included among these factors are the child’s preference, if any, the length of time the child has had the surname, the impact of the requested name change on both the mother-child and the father-child relationships, and any misconduct by either parent that would make that parent’s surname “possibly deleterious.” See, Hamman v. County Court, Jefferson County (Colo. 1988), 753 P.2d 743, 749. Other factors cited include the child’s age, the child’s embarrassment or discomfort when bearing a surname other than the family the child is presently living with, and the effect a surname may have on easing relations with a new family. In re Marriage of Schiffman (1980), 28 Cal.3d 640, 169 Cal.Rptr. 918, 922, 620 P.2d 579, 583. In addition, I would also include consideration of whether the child has any siblings, the child’s relationship to those siblings, and the impact on the child of having surnames different from the siblings’ surnames. These factors address more directly a child’s best interest when confronted with a name change than the father’s magnanimous acknowledgment of paternity, his ability to follow a court order of paying $100 per month to help support the child, and his plans to seek visitation rights with the child.
This Court’s past decisions on these type of cases also clearly demonstrate that guidelines are needed for the district courts, otherwise, the traditional preference for the father’s name will continue and a subtle form of discrimination against women will prevail. In particular, in Overton the mother and father were divorced when the mother was five months pregnant. Upon the child’s birth, the mother gave the child her surname. This Court noted that she had two other children with her surname and desired to have all her children bear the same name so as to prevent confusion and embarrassment. Two years after the child’s birth, the father petitioned to have the child’s surname changed to his and to clarify his visitation rights. The facts state that the father sought the child’s birth certifi *145 cate from the county clerk and recorder’s office so as to enroll her in the Indian tribal rolls, but the facts do not indicate that changing the child’s surname was necessary for enrollment. Overton, 207 Mont. at 293- 94, 674 P.2d at 1090. The decision also does not state the factors that the district court relied upon when determining that the best interest of the child was to have her surname changed to that of the father’s. Instead, this Court merely held that the findings and conclusions regarding the name change was not clearly erroneous and that sufficient evidence supported the findings. Overton, 207 Mont. at 296, 674 P.2d at 1091. While this Court in Overton stated that the equality of sexes was not an issue, the absence of guidelines for the district courts in these types of situations allows for a subtle form of discrimination to occur by granting a preference for the father’s name.
In Firman, this Court expressed a prevailing attitude when it held that the district court “should not permit an unnatural barrier to come between [the father] and [his] children.” Firman, 187 Mont. at 470, 610 P.2d at 181. (Emphasis added.) The use of the words “unnatural barrier” are in themselves language that suggests a preference for the father’s name. A New Jersey court in In re Rossell (1984), 196 N.J. Super. 109, 481 A.2d 602, artfully stated that
“[t]he emergence of women as equals of men in our society may be our most significant revolution. The acceptance of that emergence is grudgingly slow; it is an acceptance which the courts must not impede. Names, as this case clearly illustrates, are intimately involved with the status of women. Rules of law for changing names cannot be. premised upon unacceptable theories of inequality. The right of a mother to have the child bear her name must be recognized as equal to that of the father.”
481 A.2d at 605. While the courts are not outwardly and perhaps not even knowingly contributing to this subtle form of discrimination against women, the fact remains that the absence of guidelines in these type of cases only act to impede women’s status in society. In Romeo and Juliet, Shakespeare wrote,
“What’s in a name? That which we call a rose by any other name would smell as sweet.” (II, ii, 43.)
However, Romeo’s and Juliet’s fateful outcome attests to the problems that arise as a result of a system based on customs and traditions attached to surnames. I would therefore reverse and remand this case to the District Court to assess whether the child’s *146 name should be changed in light of the factors suggested in this dissent.