Andre **MILHOUX**, Plaintiff–Appellee,

v.

Roland **LINDER** and Raymond Linder, Defendants–Appellants.

No. 94CA0703.

Colorado Court of Appeals, Div. V.

Feb. 9, 1995.

As Modified on Denial of Rehearing March 30, 1995.

Certiorari Denied Sept. 25, 1995.

858

Machol, Johannes & Vanstrom, P.C., James A. Kaplan, Denver, for plaintiff-appellee.

Allen, Rogers, Metcalf & Vahrenwald, Allan S. Massey, Russell B. Sanford, Fort Collins, for defendants-appellants.

Opinion by Judge BRIGGS.

In this action for recognition and enforcement of a foreign judgment, defendants, Roland and Raymond Linder, appeal the trial court's denial of their motion for relief from judgment in favor of plaintiff, Andre Milhoux. We affirm.

Plaintiff was a shareholder in, and an employee of, defendants' corporation in Belgium. His employment was terminated by defendants in 1977. That same year he brought a wrongful termination action in Belgium against the corporation.

In 1980, the Belgian court awarded damages against defendants' corporation for the wrongful termination. However, the corporation was later declared bankrupt and plaintiff obtained no recovery from it.

In 1983, plaintiff brought a new action in Belgium against defendants individually. Plaintiff claimed damages allegedly arising out of the wrongful termination and the fraudulent manipulation of company financial records. The Belgian court awarded plaintiff a money judgment against defendants in 1990, after a jury trial at which defendants were represented by counsel.

Plaintiff filed for recognition and sought enforcement of the Belgian judgment in the district court pursuant to Colorado's Uniform Foreign Money–Judgments Recognition Act, § 13–62–101, et seq., C.R.S. (1987 Repl.Vol. 6A) (the Recognition Act), and Colorado's Uniform Enforcement of Foreign Judgments Act, § 13–53–101, et seq., C.R.S. (1987 Repl. Vol. 6A) (the Enforcement Act). The district court entered an award recognizing the judgment.

Defendants did not become aware of these proceedings until after the district court had recognized the Belgian judgment and a judgment lien had been placed on their property. This was because notice of the foreign judgment had been mailed to defendants' prior address.

Defendants filed a motion for relief from the judgment and a stay of execution. The trial court denied the motion, and defendants filed this appeal.

I.

Defendants first contend the trial court erred in recognizing the Belgian judgment under the Recognition Act because no reciprocity agreement exists between Belgium and the United States. We agree that recognition cannot properly be premised on the Recognition Act. However, because recognition is also available as a matter of comity, we conclude that the trial court did not err in recognizing the judgment.

## A.

■ The Recognition Act provides for the recognition of a money judgment obtained in a foreign state if that judgment is final, conclusive, and enforceable where rendered. Sections 13–62–102 and 13–62–103, C.R.S. (1987 Repl.Vol. 6A). The Recognition Act defines a "foreign state" as:

> any governmental unit other than the United States, any state, district, commonwealth, territory, insular possession thereof, or the Panama Canal Zone, the Trust Territory of the Pacific Islands, or the Ryukyu Islands, *which governmental unit has entered into a reciprocal agreement with the United States recognizing any judgment of a court of record of the United States, or any state, district, commonwealth, territory, insular possession thereof, or the Panama Canal Zone, the Trust Territory of the Pacific Islands, or the Ryukyu Islands, and providing for procedures similar to those contained in this article.*

Section 13–62–102(1), C.R.S. (1987 Repl.Vol. 6A) (emphasis added). The definition of "foreign state" in § 13–62–102(1) is thus unambiguous in its requirement that the foreign government have entered into a reciprocity agreement with the United States before judgments from its courts will be recognized in Colorado.

Plaintiff argues that this interpretation of the term "foreign state" would render the Recognition Act meaningless as to all judgments obtained in any foreign country because the United States has not entered into a formal agreement with *any* foreign country regarding reciprocal recognition of foreign judgments. However, that no other country has yet adopted such an agreement does not render the Act meaningless. It simply means that Colorado's Recognition Act cannot be utilized as a basis for requiring recognition of a foreign judgment until such time as a reciprocity agreement is adopted by the country in which the judgment is obtained. Further, the legislative history indicates an intent that, in the meantime, the Act provide a source of encouragement to other countries to enter into such reciprocity agreements.

As originally submitted to the General Assembly for discussion, the Recognition Act was identical in form to the Uniform Foreign Money–Judgments Recognition Act (Uniform Recognition Act), which does not include any reciprocity requirements. H.B. 1333, 51st General Assembly 1977, First Session 1977 (as proposed). *See* Uniform Foreign Money–Judgments Recognition Act, 13 Uniform Laws Annot. 263 (1986).

The drafters of the Uniform Recognition Act affirmatively rejected reciprocity as a factor to consider in recognition of foreign money judgments. This was in part in recognition that requiring reciprocity penalized private individuals for positions taken by foreign governments, reduced predictability in the recognition of foreign judgments, and in practice had a tendency to cause a general breakdown of recognition practice. *See Hunt v. BP Exploration Co. (Libya) Ltd.,* 492 F.Supp. 885 (N.D.Tex.1980). The hope was that the certainty of recognition provided in the Uniform Recognition Act would encourage recognition of similar United States judgments abroad. *See Guinness PLC v. Ward,* 955 F.2d 875 (4th Cir.1992).

Members of the General Assembly which enacted Colorado's Recognition Act similarly stated that its purpose was to provide a system to recognize foreign judgments and allow judgment creditors to enforce those foreign judgments in the same manner as judgments entered in any United States court. Hearings on H.B. 1333 before the House Judiciary Committee, 51st General Assembly, First Session (March 3, 1977). Legislators also intended adoption of the Recognition Act to make it easier for United States citizens to have United States judgments recognized in foreign countries which have reciprocity requirements. Hearings on H.B. 1333 before the Senate Judiciary Committee, 51st General Assembly, First Session (April 18, 1977).

However, during discussions in committee, certain legislators expressed concern about the lack of a reciprocity requirement. As a result, the bill was amended on the floor of the House to include the language now in the definition of "foreign state." Hearings on H.B. 1333 before the House Judiciary Com-

mittee, 51st General Assembly, First Session (March 3, 1977). The legislator proposing the "reciprocal agreement" amendment stated that its purpose was to require reciprocity so that, before Colorado would accept a judgment obtained in a foreign jurisdiction, that foreign jurisdiction would have to agree to accept Colorado judgments. House Floor Debate on H.B. 1333, 51st General Assembly, First Session (April 4, 1977).

We therefore conclude that the unambiguous language of the Recognition Act requires a reciprocity agreement before a foreign judgment will be recognized and that this requirement does not necessarily render the Act meaningless. Thus, the district court was not required by the Recognition Act to recognize the Belgian judgment against defendants.

### B.

■ Significantly, however, the Recognition Act also provides that: "This article does not prevent the recognition of a foreign judgment in situations not covered by this article." Section 13–62–108, C.R.S. (1987 Repl.Vol. 6A). Thus, the Recognition Act "delineates a *minimum* of foreign judgments which *must* be recognized in jurisdictions which have adopted the Act, and in no way constitutes a *maximum* limitation upon foreign judgments which *may* be given recognition apart from the Act." *See Guinness PLC v. Ward, supra,* at 884 (emphasis in original). We therefore conclude that a foreign judgment may also be recognized under the common law doctrine of comity.

■ Comity in these circumstances is neither a matter of absolute obligation nor mere courtesy. It is the recognition one nation or political subdivision allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws. *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895).

In the seminal case of *Hilton v. Guyot, supra,* the United States Supreme Court concluded that the federal courts may recognize and give conclusive effect to foreign judgments, provided:

> there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect....

*Hilton v. Guyot, supra,* 159 U.S. at 202–203, 16 S.Ct. at 158–159, 40 L.Ed. at 122; *see also In re Colorado Corp.,* 531 F.2d 463 (10th Cir.1976); *Gull v. Constam,* 105 F.Supp. 107 (D.Colo.1952).

■ While the recognition of foreign judgments by state courts may be a matter of state law, *see Ingersoll Milling Machine Co. v. Granger,* 833 F.2d 680 (7th Cir.1987); *Pariente v. Scott Meredith Literary Agency, Inc.,* 771 F.Supp. 609 (S.D.N.Y.1991), we are not persuaded that the requirements in Colorado must differ from those established by the United States Supreme Court in *Hilton v. Guyot, supra.* However, we conclude that reciprocity is not an additional requirement for recognition of foreign judgments in Colorado as a matter of comity.

The United State Supreme Court initially suggested in *Hilton v. Guyot, supra,* that reciprocity be an additional requirement for recognition. However, it is unlikely that it is any longer a requirement for enforcement of foreign judgments in federal courts. *See Tahan v. Hodgson,* 662 F.2d 862 (D.C.Cir. 1981). This is because the increasing internationalization of commerce requires that United States courts recognize and respect the judgments entered by foreign courts to the greatest extent consistent with our own ideals of justice. "Unfettered trade, good will among nations, and a vigorous and stable international—and national—economy demand no less." *Tahan v. Hodgson, supra,* at

868; *see also Ackermann v. Levine*, 788 F.2d 830 (2d Cir.1986).

Here, the trial court did address the issue of comity, although in the context of enforcement rather than recognition of the judgment. Nevertheless, the court found comity applicable because defendants were represented by counsel during the Belgian proceedings, the Belgian court had personal and subject matter jurisdiction, and there was no evidence of fraud. In addition, defendants did not claim they were denied the opportunity in Belgium for a full, fair, and impartial trial. *See Ingersoll Milling Machine Co. v. Granger, supra* (procedures afforded by the Belgian judicial system are fundamentally fair and should be recognized under the Illinois Uniform Foreign Money–Judgments Recognition Act).

Under these circumstances, we conclude that the district court properly recognized the Belgian judgment as a matter of comity.

## II.

Defendants next contend that the trial court erred in recognizing the Belgian judgment because they were unfairly burdened in their defense as a result of Belgium's 30–year statute of limitations period. They argue the judgment is therefore repugnant to Colorado's public policy. We disagree.

Under the doctrine of comity, a court may refuse to recognize a foreign judgment if the claim for relief on which it is based is repugnant to the public policy of the state. *See Ackermann v. Levine, supra; Tahan v. Hodgson, supra*.

The standard for refusing to enforce a foreign judgment on public policy grounds is narrow in scope. *Panama Processes, S.A. v. Cities Service Co.*, 796 P.2d 276 (Okla.1990); Uniform Conflict of Laws—Limitations Act § 4 (comment), 12 Uniform Laws Annot. 64 (1994 Pamphlet). This reflects a compromise between two guiding but sometimes conflicting principles in the law of recognition and enforcement of foreign judgments: (1) *res judicata* and (2) fairness to the litigants or fairness regarding the underlying transaction. *See Ackermann v. Levine, supra*.

As a result, courts in the United States normally will not deny recognition merely because the law or practice of the foreign country differs, even if markedly from that of the recognition forum. *See Hunt v. BP Exploration Co. (Libya) Ltd., supra;* Uniform Foreign Money–Judgments Recognition Act § 4 (comment), 13 Uniform Laws Annot. 268 (1986) (A mere difference in the procedural system is not a sufficient basis for non-recognition. A case of serious injustice must be involved.). As Judge Cardozo observed: "We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home." *Loucks v. Standard Oil Co.*, 224 N.Y. 99, 110–11, 120 N.E. 198, 201 (1918).

As have numerous other courts, we conclude that an appropriate standard is that set forth in the Restatement (Second) of Conflicts § 117 comment c (1971). Under this standard, the public policy exception is limited to "situations where the original claim is repugnant to fundamental notions of what is decent and just" in the recognition forum. *See Ackermann v. Levine, supra; Tahan v. Hodgson, supra; Pariente v. Scott Meredith Literary Agency, Inc., supra*.

Defendants rely on § 13–82–106, C.R.S. (1987 Repl.Vol. 6A), which permits a Colorado court to apply this state's limitation period in a conflicts of law claim if it determines the other state's limitations period is substantially different from Colorado's and imposes an unfair burden on the defendant. However, this provision does not provide a basis for non-recognition of a final, conclusive foreign judgment.

Here, defendants have failed to demonstrate that Belgium's longer statute of limitations caused any burden that was repugnant to fundamental notions of what is decent and just. Defendants were on notice of plaintiff's claims since commencement of the initial litigation in 1977. As noted above, defendants were represented by counsel and there is nothing to suggest that defendants were denied a full and fair opportunity to be heard.

Thus, we conclude the length of the Belgian statute of limitations is not so fundamentally unfair or unjust under the facts of

this case as to be repugnant to Colorado's public policy.

## III.

Finally, defendants contend that mailing the notice informing them of filing the Belgian judgment to their last known address did not satisfy the Enforcement Act or the requirements of due process because they did not receive actual notice. We disagree.

The Enforcement Act provides that any foreign judgment which is entitled to full faith and credit in the courts of this state shall have the same effect as a judgment of a court in this state when filed according to the procedures of the Enforcement Act. Sections 13–53–102(1) & 13–53–103, C.R.S. (1987 Repl.Vol. 6A).

The Enforcement Act requires that the judgment creditor or his or her attorney make and file with the clerk of the court an affidavit setting forth the name and last-known post-office address of the judgment debtor. The clerk of the court shall, and the judgment creditor may, mail notice of the filing of the foreign judgment to the judgment debtor, and no execution on the judgment may issue until ten days after the judgment is filed. Section 13–53–104, C.R.S. (1987 Repl.Vol. 6A).

The trial court concluded that the terms of the Enforcement Act did not apply to a foreign judgment because the reference in § 13–53–102(1) to full faith and credit limited that Act to judgments of sister states. However, the Recognition Act provides that any foreign judgment accepted for recognition is entitled to full faith and credit. Section 13–62–104, C.R.S. (1987 Repl.Vol. 6A). We likewise conclude that, if a foreign judgment is recognized under principles of comity, it is entitled to full faith and credit. *See Gull v. Constam, supra.* Thus, the Enforcement Act applies.

We therefore disagree with the trial court's conclusion that the Enforcement Act is inapplicable. However, because we conclude that plaintiff complied with the requirements of the Enforcement Act and due process, we affirm the trial court's ruling. *See Cole v. Hotz,* 758 P.2d 679 (Colo.App.1987) (a correct judgment will not be disturbed on review even though the reason for the decision may be wrong).

The Enforcement Act does not require actual receipt by the defendant of the notice of filing. What is required is the filing of the affidavit setting forth the judgment debtor's last known address and the mailing of the notice to the judgment debtor. *See Gedeon v. Gedeon,* 630 P.2d 579 (Colo.1981), *appeal dismissed,* 454 U.S. 1050, 102 S.Ct. 592, 70 L.Ed.2d 585 (1981) (the Enforcement Act requires only that the judgment debtor be notified by mail at his last known address).

Further, our supreme court has determined that the due process requirements of the United States Constitution are satisfied by the procedures of the Enforcement Act. This is because the basic requirements of notice and an opportunity for a hearing are satisfied by the foreign court which rendered the original judgment. Hence, prejudgment notice and hearing requirements do not apply in post-judgment proceedings. *Gedeon v. Gedeon, supra.*

Here, plaintiff's attorney filed an affidavit setting forth defendants' address as last known to her and to plaintiff, and the notice of filing was mailed to that address. Although defendants contended plaintiff's attorney should have known that defendant Roland Linder was at a different address, they did not present evidence that plaintiff or his attorney knew the address was incorrect.

Moreover, defendants do not contend that they were precluded from raising any available defense or challenge under C.R.C.P. 60(b) or that they suffered any prejudice. *See* § 13–53–103, C.R.S. (1987 Repl.Vol. 6A); *see generally Marworth, Inc. v. McGuire,* 810 P.2d 653 (Colo.1991). In fact, defendants did appear and raise their available defenses to the recognition and enforcement of the judgment. Thus, we find no constitutional violation in the procedures provided and no reversible error.

Judgment affirmed.

STERNBERG, C.J., and TAUBMAN, J., concur.