2015 COA 114

**LEDROIT LAW, a Canadian law firm, Plaintiff–Appellee,**

v.

**Eugene KIM, an individual, and Snell & Wilmer L.L.P., an Arizona limited liability partnership, Defendants–Appellants.**

**Court of Appeals No. 14CA1161**

Colorado Court of Appeals,
Div. VI.

Announced August 13, 2015

Douglas A. Turner, P.C., David J. Marcus, Golden, Colorado, for Plaintiff–Appellee.

Snell & Wilmer L.L.P., James D. Kilroy, Jessica E. Yates, Neal McConomy, Denver, Colorado, for Defendants–Appellants.

Opinion by CHIEF JUDGE LOEB

¶ 1 Defendants, Eugene Kim and Snell & Wilmer L.L.P., appeal the district court's order recognizing a money judgment entered by the Ontario Superior Court of Justice against them and in favor of plaintiff, Ledroit Law. We reverse the order recognizing the Ontario judgment.

## I.  Background

¶ 2 Ledroit Law, a Canadian law firm, filed this action in district court seeking recognition of an Ontario court's "assessment" of legal fees in the amount of $15,829.99 Canadian against Snell & Wilmer L.L.P., an Arizona law firm with offices in Colorado, and Eugene Kim, a former associate at Snell & Wilmer.

¶ 3 In 2011 and 2012, Snell & Wilmer represented two related Ontario entities in a civil suit they filed against an American corporation in federal court in Colorado. Kim was a first-year associate at Snell & Wilmer who worked on that case. Around the same time, Ledroit represented at least one of the Ontario entities in related proceedings in Canada.

¶ 4 According to defendants, the principals of the Ontario entities instructed Snell & Wilmer to have Ledroit serve subpoenas duces tecum in Ontario related to the federal suit in Colorado. From October 2011 to January 2012, Kim communicated with Ledroit by telephone and e-mail to coordinate service of the subpoenas.

¶ 5 In March 2012, Ledroit sent Snell & Wilmer a bill for legal fees of over $15,000 Canadian for Ledroit's attempts to serve the subpoenas. Although Ledroit admitted it could not find an executed retainer agreement with Snell & Wilmer, it claimed that Snell & Wilmer had retained Ledroit to perform legal services. Snell & Wilmer responded that Kim had contacted Ledroit at the direction of their mutual client, the Ontario entities, and that the Ontario entities were responsible for the bill.

¶ 6 In September 2013, Ledroit filed an action in the Ontario Superior Court of Justice to recover the legal fees billed to defendants. Ledroit sent a "Notice of Appointment for Assessment of Costs" by regular mail to Kim's office at Snell & Wilmer in Colorado. The notice stated:

> I HAVE MADE AN APPOINTMENT to assess the invoice of Ledroit Beckett dated February 19, 2012, a copy of whose bill of costs is attached to this notice, on Monday, November 4, 2013 at 9:00 a.m. at the Court House, 80 Dundas Street, London, Ontario.

¶ 7 Ledroit appeared before the Ontario court on the appointment date, but defendants did not appear. The Ontario court issued an assessment in the amount of $15,829.99 Canadian against Kim and Snell & Wilmer.

¶ 8 Ledroit then filed this action in district court, seeking enforcement of the Ontario assessment in Colorado under the Uniform Enforcement of Foreign Judgments Act (Enforcement Act), sections 13–53–101 to –108, C.R.S. 2014. The district court entered an order domesticating the assessment under the Enforcement Act several days later.

¶ 9 Defendants moved to vacate the order on the basis that the Enforcement Act applies only to judgments entered by sister states within the United States. Defendants noted that a separate statute, the Uniform Foreign-country Money Judgments Recognition Act (Recognition Act), sections 13–62–101 to –112, C.R.S. 2014, governs recognition of foreign-country money judgments. The district court vacated its order and stated that it would construe Ledroit's original filing as an action under the Recognition Act. It directed defendants to file a response.

¶ 10 In their response, defendants asserted several grounds for nonrecognition under the Recognition Act, including lack of personal jurisdiction. They argued that the Ontario court lacked personal jurisdiction over them because (1) they were not validly served with process and (2) they lacked minimum contacts with Ontario sufficient to support jurisdiction.

¶ 11 After further briefing from both parties, the district court entered a written order recognizing the Ontario assessment under both the Recognition Act and common law principles of comity. The court concluded that service of process by mail was proper because it was permitted by the Ontario Rules of Civil Procedure. The court also concluded that defendants "established minimum contacts with Ontario by calling, emailing, and directing the actions of [Ledroit] in Ontario to deliver a subpoena on Canadian persons in Canada." Accordingly, the district court ruled that the Ontario court had personal jurisdiction over defendants when it entered the assessment. The district court rejected the other grounds for nonrecognition asserted by defendants and ordered that the assessment be recognized in Colorado under the Recognition Act. The court also ruled that the assessment could be recognized under common law principles of comity.

¶ 12 This appeal followed.

## II. Recognition Act

¶ 13 Defendants first contend that the district court erred in recognizing the Ontario judgment under the Recognition Act because the Ontario court lacked personal jurisdiction over them. We agree.

¶ 14 Whether a court has personal jurisdiction over a party is a question of law that we review de novo. *Giduck v. Niblett,* 2014 COA 86, ¶ 11, —— P.3d ——.

¶ 15 The Recognition Act applies to any foreign-country judgment that "(a) [g]rants or denies recovery of a sum of money; and (b) [u]nder the law of the foreign country where rendered, is final, conclusive, and enforceable," with certain exceptions not applicable here. § 13–62–103(1), C.R.S. 2014. On appeal, the parties agree that the Recognition Act applies to the Ontario assessment.

¶ 16 If a court finds that a foreign-country judgment is entitled to recognition, the judgment is conclusive between the parties and enforceable "in the same manner and to the same extent as a judgment rendered in this state." § 13–62–107(1), C.R.S. 2014.

¶ 17 The Recognition Act provides that Colorado courts "shall recognize" foreign-country judgments that fall within the scope of the statute unless a listed ground for nonrecognition applies. § 13–62–104(1), C.R.S.2014. The party opposing recognition has the burden of establishing grounds for nonrecognition. § 13–62–104(4). As relevant here, a Colorado court "may not recognize a foreign-country judgment if . . . [t]he foreign court did not have personal jurisdiction over the defendant." § 13–62–104(2)(b).

¶ 18 Defendants contend that the Ontario court lacked personal jurisdiction over them when it issued the assessment because (1) service of process by regular mail was invalid and (2) they lacked minimum contacts with Ontario sufficient to support jurisdiction.

¶ 19 A court may not exercise personal jurisdiction over a defendant without valid service of process. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 350, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999); *Goodman Assocs., LLC v. WP Mountain Props., LLC,* 222 P.3d 310, 315 (Colo.2010).

¶ 20 As set forth below, we conclude that defendants were not validly served with process when Ledroit attempted to serve them by regular mail. Accordingly, the Ontario court lacked personal jurisdiction over defendants, and the Ontario assessment may not be recognized in Colorado under the Recognition Act.

¶ 21 Because we conclude that the Ontario court lacked personal jurisdiction due to invalid service of process, we need not decide whether defendants had sufficient minimum contacts with Ontario to support jurisdiction.

### A. Service of Process

¶ 22 Ledroit attempted to serve defendants by sending notice of the assessment hearing by regular mail to Kim's office at Snell & Wilmer in Colorado. We conclude that Ontario law does not permit service by mail under the circumstances of this case, and, therefore, defendants were not validly served with process.

¶ 23 Rule 17.05 of the Ontario Rules of Civil Procedure governs service of process outside Ontario. Subsection (3) of that rule applies to service in countries that are signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (hereinafter Hague Convention). Canada and the United States are both signatories to the Hague Convention. *Id.*

¶ 24 Rule 17.05(3) provides:

An originating process or other document to be served outside Ontario in a contracting state shall be served,

(a) through the central authority in the contracting state; or

(b) in a manner that is permitted by the Convention and that would be permitted by these rules if the document were being served in Ontario.

Rules of Civil Procedure, R.R.O. 1990, Reg. 194, r. 17.05(3) (Can. Ont.) (Rule 17.05).

¶ 25 It is undisputed that Ledroit did not serve defendants through the United States' designated central authority under Rule 17.05(3)(a). Thus, we must determine wheth-

er service of process by regular mail met the requirements of Rule 17.05(3)(b). Under that rule, the method of service must be permitted by both the Hague Convention and the Ontario rules. We examine each in turn.

### 1. Hague Convention

¶ 26 The primary method of service authorized by the Hague Convention is service through a "central authority" designated by the receiving country. *See* Hague Convention arts. 2–6. However, the Hague Convention also permits other methods of serving documents. Article 10 states:

Provided the State of destination does not object, the present Convention shall not interfere with—

*(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,*

(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Hague Convention art. 10 (emphasis added). The United States has not objected to Article 10.

¶ 27 No Colorado appellate court has addressed whether Article 10(a) permits service of process by mail, and federal circuit courts are split on this issue. Some circuits have held that the word "send" in subsection (a) does not mean "serve," reasoning that the word "service" is specifically used in other sections of the Hague Convention, including subsections (b) and (c) of Article 10. *See Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 384 (5th Cir.2002); *Bankston v. Toyota Motor Corp.*, 889 F.2d 172, 173–74 (8th Cir.1989). Other circuits have held that the word "send" was intended to include service, relying on the history of negotiations leading up to the Hague Convention and its purpose to facilitate international service. *See Brockmeyer v. May*, 383

F.3d 798, 802–03 (9th Cir.2004); *Ackermann v. Levine*, 788 F.2d 830, 838–40 (2d Cir.1986). *Brockmeyer* specifically held that that Article 10(a) permits service of process by mail only if that method is affirmatively authorized by the law of the forum state. 383 F.3d at 803–04.

¶ 28 We need not decide whether the Hague Convention permits service by mail because, as noted, Ontario Rule 17.05(3)(b) requires that the manner of service be permitted by both the Hague Convention and the Ontario rules. For the reasons set forth below, we conclude that the Ontario rules do not permit service of process by mail under the circumstances of this case.

### 2. Ontario Rules

¶ 29 Ledroit contends that service by mail was proper based on rules 16.03(4), 16.08, and 2.03 of the Ontario Rules of Civil Procedure. We address each rule in turn.

#### a. Rule 16.03(4)

¶ 30 Rule 16 of the Ontario Rules of Civil Procedure sets forth general rules for the manner of service. Rule 16.01(1) states that "[a]n originating process shall be served personally as provided in rule 16.02 or by an alternative to personal service as provided in rule 16.03." Rules of Civil Procedure, R.R.O. 1990, Reg. 194, r. 16.01(1).

¶ 31 Ledroit does not argue that it complied with the requirements of personal service in Rule 16.02. Rather, Ledroit contends, and the Denver District Court ruled, that service by mail was permitted in this case as an alternative to personal service under Rule 16.03(4). We disagree.

¶ 32 As an initial matter, Rule 16.03 applies only "[w]here these rules or an order of the court permit service by an alternative to personal service." Rules of Civil Procedure, R.R.O. 1990, Reg. 194, r. 16.03(1) (Rule 16.03). The record contains no court order permitting alternative service in the Ontario case, nor does Ledroit identify a rule permitting alternative service under the circumstances presented. Therefore, the methods

of alternative service set forth in Rule 16.03 were not available to Ledroit.

¶ 33 Moreover, Ledroit did not follow the particular procedure for service by mail outlined in Rule 16.03(4). That rule provides:

> Service of a document may be made by sending a copy of the document together with an acknowledgment of receipt card (Form 16A) by mail to the last known address of the person to be served, but service by mail under this subrule is only effective as of the date the sender receives the card.

Rule 16.03(4). Nothing in the record reflects, and Ledroit does not contend, that it included an acknowledgment of receipt card with the notice it sent to defendants. Thus, even if alternative service had been permitted, Ledroit did not properly serve defendants by mail under Rule 16.03(4).

### b. Rule 16.08

¶ 34 Ledroit next argues that, even if the Ontario rules did not permit the specific method of service Ledroit employed, the service was validated by the Ontario court pursuant to Ontario Rule 16.08. Again, we disagree.

¶ 35 Rule 16.08 allows a court to enter an order validating service that does not comply with the methods set forth in the Ontario rules:

> Where a document has been served in a manner other than one authorized by these rules or an order, the court may make an order validating the service where the court is satisfied that,
>
> (a) the document came to the notice of the person to be served; or
>
> (b) the document was served in such a manner that it would have come to the notice of the person to be served, except for the person's own attempts to evade service.

Rules of Civil Procedure, R.R.O. 1990, Reg. 194, r. 16.08 (Rule 16.08).

¶ 36 We reject Ledroit's contention that the Ontario assessment constituted an order validating service under Rule 16.08. The assessment is a one-page form of printed text with lines where the date, parties, and amount owed are handwritten in. The form's printed text states: "I was attended by counsel for the solicitor and by counsel for the client (or) no one appearing for the client although duly notified and proceeded with the assessment of the said bill." We are not persuaded that this form language constitutes an order purporting to validate Ledroit's attempt to serve defendants by mail. The written assessment contains no indication that the court actually considered whether defendants were served with process, nor does it contain any finding that the requirements for validated service were met. *See* Rule 16.08(a)-(b). Under these circumstances, we conclude that the Ontario court did not validate Ledroit's service by mail when it issued the assessment.

¶ 37 Furthermore, the Court of Appeal for Ontario has ruled that validated service under Rule 16.08 is not available for service on foreign defendants in countries that are parties to the Hague Convention. *See Khan Res. Inc. v. Atomredmetzoloto JSC*, 2013 ONCA 189, ¶¶ 3, 25–26 (Ct. App. Ont. Can.) (*Khan III*). In *Khan III*, the plaintiff attempted to serve Russian defendants through Russia's central authority, following the procedure set forth in Ontario Rule 17.05(3)(a). *Id.* at ¶ 1. When the Russian government refused service, the plaintiff sought validated service under Ontario Rule 16.08. *Id.* at ¶¶ 1–2. The *Khan III* court held that "rule 17.05(3) is a complete code for service on foreign defendants in states that are parties to the Convention." *Id.* at ¶ 3. Accordingly, the court ruled that the plaintiff could not use validated service to avoid complying with the requirements of the Hague Convention under Rule 17.05. *See id.* at ¶¶ 3, 49.

¶ 38 We note that unlike this case, *Khan III* involved service of process through a central authority under Rule 17.05(3)(a). Although the *Khan III* court did not specifically address subsection (b), the provision at issue in this case, the court also did not expressly limit its holding to subsection (a). In any event, even if Ledroit could have sought a court order validating service, we have concluded that Ledroit failed to obtain such an order here.

¶ 39 The Ontario cases cited by Ledroit do not require a different result. First, Ledroit cites *Khan Resources v. ARMZ*, 2011 ONSC 5465 (Super. Ct. J. Ont. Can.) (*Khan I*), which was reversed on direct appeal. *See Khan Res. v. Atomredmetzoloto JSC*, 2012 ONSC 1522 (Super. Ct. J. Ont. Can.) (*Khan II*) (reversing the order validating service in *Khan I*); *see also Khan III*, 2013 ONCA 189 (affirming the *Khan II* holding that validated service was not permitted for defendants outside Ontario, as discussed above). Ledroit next cites *Toronto (City) Chief Building Official v. Tseng*, 2011 ONSC 4594 (Super. Ct. J. Ont. Can.). In *Tseng*, the Ontario Superior Court of Justice entered an order validating service by e-mail on a defendant in the United States. *Id.* at ¶¶ 4, 18. However, that order was entered before the Court of Appeal's ruling in *Khan III* that validated service is not available for service on foreign defendants in countries that are signatories to the Hague Convention. Moreover, unlike this case, the plaintiff in *Tseng* actually moved for an order validating service, and the court made specific findings under Rule 16.08 that validated service was warranted under the circumstances. *Id.* at ¶18. As discussed above, Ledroit did not move for validated service, and the Ontario court that issued the assessment did not make any findings under Rule 16.08.

¶ 40 Under these circumstances, we conclude that Ledroit's attempt to serve defendants by mail was not validated under Rule 16.08.

### c. Rule 2.03

¶ 41 Finally, Ledroit relies on Rule 2.03 of the Ontario Rules of Civil Procedure, which states "[t]he court may, only where and as necessary in the interest of justice, dispense with compliance with any rule at any time." Rules of Civil Procedure, R.R.O. 1990, Reg. 194, r. 2.03 (Rule 2.03). However, there was no court order in the Ontario case dispensing with compliance with the rules for service of process, nor was there any finding that doing so was "necessary in the interest of justice." Rule 2.03; *see also Wellwood v. Ont. Provincial Police*, 2010 ONCA 386, ¶ 34 (Ct. App. Ont. Can.) (Before granting relief under Rule

2.03, "the court must first conclude that such relief is necessary in the interest of justice."). Thus, Rule 2.03 is inapplicable here.

¶ 42 Ledroit does not identify any other Ontario rule that would permit service of process by regular mail under the circumstances here. Therefore, we conclude that defendants were not served with process in a manner "that would be permitted by these rules if the document were being served in Ontario," as required under Rule 17.05(3)(b).

¶ 43 Because defendants were not validly served with process, we conclude that the Ontario court lacked personal jurisdiction over defendants when it issued the assessment. Accordingly, Colorado courts may not recognize the Ontario assessment. *See* § 13–62–104(2)(b).

¶ 44 We reject Ledroit's contention that we must recognize the assessment because defendants failed to challenge jurisdiction in the Ontario court. The Recognition Act requires Colorado courts to deny recognition of foreign judgments entered without personal jurisdiction, and it does not contain any exception based on a party's failure to raise the issue in the foreign court. *See* § 13–62–104(2)(b).

### B. Minimum Contacts

¶ 45 Because we conclude the Ontario court lacked personal jurisdiction over defendants due to invalid service of process, we need not decide whether defendants had minimum contacts with Ontario sufficient to support personal jurisdiction. If Ledroit properly serves defendants in the future, defendants may contest personal jurisdiction on that basis at the appropriate time and in the appropriate forum.

### III. Principles of Comity

¶ 46 Defendants next contend that the district court erred in recognizing the Ontario assessment separately based on the doctrine of comity. Defendants argue that, where a judgment falls within the scope of the Recognition Act, the court must apply that statute rather than common law principles of comity to determine whether the judgment may be recognized in Colorado. We agree.

¶ 47 We review de novo whether the district court applied the correct legal standard. *See Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't,* 196 P.3d 892, 897–98 (Colo.2008). We also review de novo questions of law concerning the application and construction of statutes. *Id.* at 897.

¶ 48 As an initial matter, we reject Ledroit's contention that this issue was not preserved for appeal because defendants did not specifically argue in district court that the doctrine of comity was inapplicable. Both parties focused on the Recognition Act in their arguments before the district court, mentioning the doctrine of comity only briefly and in a conclusory fashion. The district court, however, included a detailed analysis of recognition under the doctrine of comity in its written order. Under these circumstances, we are able to review whether the district court erred in applying the doctrine of comity to this case. *See People v. Melendez,* 102 P.3d 315, 322 (Colo.2004) ("We do not require that parties use talismanic language to preserve particular arguments for appeal, but the trial court must be presented with an adequate opportunity to make findings of fact and conclusions of law on any issue before we will review it." (internal quotation marks omitted)).

¶ 49 The Recognition Act provides that "[t]his article does not prevent the recognition under principles of comity or otherwise of a foreign-country judgment *not within the scope of this article.*" § 13–62–111, C.R.S. 2014 (emphasis added). For judgments within its scope, however, the Recognition Act requires a Colorado court to deny recognition if the foreign court lacked personal jurisdiction. *See* § 13–62–104 cmt. 6 ("[T]he forum court *must* deny recognition to the foreign-country judgment if the foreign court did not have personal jurisdiction over the defendant." (emphasis added)).

■ ¶ 50 Based on this mandatory language, we conclude that a court may not recognize a foreign-country judgment based on common law principles of comity where that judgment falls within the scope of the Recognition Act and a mandatory ground for nonrecognition exists. Under those circumstances, the court must apply the statute and deny recognition of the judgment.

¶ 51 It is undisputed that the Ontario assessment falls within the scope of the Recognition Act. As set forth above, we have also concluded that the Ontario court lacked personal jurisdiction over defendants when it issued the assessment. Therefore, under section 13–62–104(2)(b), the district court was required to deny recognition of the assessment. Accordingly, the district court erred in recognizing the assessment separately as a matter of comity.

¶ 52 Ledroit's reliance on *Milhoux v. Linder,* 902 P.2d 856 (Colo.App.1995), does not compel a different result. In that case, a division of this court applied the doctrine of comity to affirm recognition of a Belgian judgment that was *not* within the scope of the Recognition Act. *Id.* at 858–60.[1] Thus, *Milhoux* is inapplicable where, as here, the foreign-country judgment falls within the scope of that statute.

¶ 53 For these reasons, we reverse the district court's order recognizing the Ontario assessment under the Recognition Act and as a matter of comity. Because the Ontario court lacked personal jurisdiction over defendants due to invalid service of process, the Ontario assessment may not be recognized by Colorado courts, *see* § 13–62–104(2)(b), and the Ontario assessment has no force or effect in this state. *See Goodman Assocs.,* 222 P.3d at 315 ("[A] default judgment entered by a court without personal jurisdiction over the defendant, e.g., due to an invalid service of process, is a nullity and without effect.").

1. Notably, the version of the Recognition Act in effect when *Milhoux* was decided required a reciprocity agreement between a foreign country and the United States before judgments of that country could be recognized in Colorado. *Milhoux v. Linder,* 902 P.2d 856, 859–60 (Colo.App.1995). Because no reciprocity agreements existed at that time, the Recognition Act had little practical application apart from encouraging countries to enter such agreements. *Id.* at 859. The Recognition Act has since been amended to eliminate the reciprocity requirement. Ch. 42, sec. 1, §§ 13–62–102 to –103, 2008 Colo. Sess. Laws 99–100.

## IV. Request for Attorney Fees

¶ 54 Ledroit requests an award of attorney fees incurred in this appeal. Because Ledroit has not prevailed on appeal, we deny that request.

## V. Conclusion

¶ 55 The order is reversed.

Sternberg * and Ney *, JJ., concur.