IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

THE STATE OF THE NETHERLANDS,
*Plaintiff/Appellee,*

*v.*

MD HELICOPTERS, INC.,
*Defendant/Appellant.*

No. CV-20-0112-PR
**Filed December 30, 2020**

Appeal from the Superior Court in Maricopa County
The Honorable Joshua D. Rogers, Judge
The Honorable Margaret Benny, Judge *Pro Tempore*
No. CV2015-095127
**AFFIRMED**

Opinion of the Court of Appeals, Division One
248 Ariz. 533 (App. 2020)
**AFFIRMED**

COUNSEL:

James E. Berger (argued), King & Spalding LLP, New York, NY; Daniel G. Dowd, Cindy C. Albracht-Crogan, Stacey F. Gottlieb, Kevin C. Moyer, Cohen Dowd Quigley P.C., Phoenix, Attorneys for The State of the Netherlands

Karl M. Tilleman (argued), Erin Bradham, Douglas D. Janicik, Dentons US LLP, Phoenix, Attorneys for MD Helicopters, Inc.

C. Bradley Vynalek, Brian A. Howie, Lauren Elliot Stine, Daniel G. Roberts, Quarles & Brady LLP, Phoenix, Attorneys for Amicus Curiae Arizona Bankers Association and Canada Arizona Business Council

---

VICE CHIEF JUSTICE TIMMER authored the opinion of the Court, in which JUSTICES GOULD, LOPEZ, BEENE, and JUDGE EPPICH joined.[*] JUSTICE MONTGOMERY authored a dissenting opinion in which JUSTICE BOLICK joined.

---

VICE CHIEF JUSTICE TIMMER, opinion of the Court:

¶1        Arizona's version of the Uniform Foreign-Country Money Judgments Recognition Act, A.R.S. §§ 12-3251 to -3254 ("Act"), authorizes courts to recognize judgments originating from a foreign country with a "reciprocal law" that is "similar" to the Act.  § 12-3252(B)(2).  We are asked whether reciprocity requires a legislative act or if court decisions authorizing such procedures can be considered.  We hold that court-authorized procedures recognizing foreign-country money judgments in a manner similar to the Act can satisfy the reciprocity requirement.

## BACKGROUND

¶2        The District Court of The Hague entered a monetary judgment in favor of the Netherlands' National Police Services Agency and against MD Helicopters, Inc. ("MDHI") in a breach-of-contract lawsuit. The Hague Court of Appeal upheld the judgment.  The State of the Netherlands, as assignee of the judgment, filed suit in the superior court in Maricopa County seeking recognition of the Dutch judgment under both the Act and common law principles.   The superior court entered summary

---

[*] Chief Justice Brutinel is recused from this matter.   Pursuant to article 6, section 3 of the Arizona Constitution, Hon. Karl C. Eppich, Judge of the Court of Appeals Division Two, was designated to sit in this matter.

judgment for the Netherlands, recognizing the judgment under the Act and permitting its enforcement in Arizona.

**¶3**        The court of appeals affirmed.  *State of the Netherlands v. MD Helicopters, Inc.*, 248 Ariz. 533 (App. 2020).   In doing so, it rejected MDHI's argument that the Act did not apply here because the Netherlands did not have a reciprocal, similar legislative act.  *Id.* at 539 ¶ 16.   The court concluded that the Netherlands' legislatively enacted code of civil procedure, along with the court decisions applying it, combined to satisfy that requirement.  *Id.* at 541–42 ¶¶ 23–24.   Because the court based its decision on the Act, it did not address whether common law principles would also have authorized recognition of the judgment.  *Id.* at 546 ¶ 41.

**¶4**        We granted review to decide whether the Act's reciprocity requirement is satisfied when a foreign country's caselaw recognizes judgments in a manner that is similar to the Act, an issue of statewide importance.

## DISCUSSION

**¶5**        Arizona does not recognize or permit enforcement of a foreign-country money judgment unless the judgment creditor first domesticates that judgment in an Arizona court.  *See, e.g.*, A.R.S. § 12-3254 (describing the process for domestication under the Act).   Before 2015, Arizona courts only applied common law principles to decide whether to recognize foreign-country money judgments.  *See, e.g.*, *Alberta Sec. Comm'n v. Ryckman*, 200 Ariz. 540, 545 ¶ 15 (App. 2001) (applying Restatement (Third) of the Foreign Relations Laws of the United States §§ 481–82 (Am. Law Inst. 1987)).   Under the common law, a court recognizes a judgment if the foreign jurisdiction that issued the judgment "afforded the defendant an opportunity for a hearing that comports with basic due process principles before a court of competent jurisdiction."  *Id.* ¶ 18.   Whether that jurisdiction would recognize Arizona judgments if circumstances were reversed was not considered.  *See* Restatement § 481 cmt. d.

**¶6**        In 2015, the Arizona Legislature passed the Act, which is based on the Uniform Foreign-Country Money Judgments Recognition Act.  *See* 2015 Ariz. Sess. Laws ch. 170, § 1 (1st Reg. Sess.).   It requires courts to recognize foreign-country money judgments subject to the Act unless a listed exception exists.  §§ 12-3252 and -3253.   Unlike the uniform act and common law, the Act includes a reciprocity requirement, § 12-3252(B)(2), which excludes from the Act any judgment that "[o]riginates from a foreign

country that has not adopted or enacted a reciprocal law related to foreign-country money judgments that is similar to this chapter." The Act does not address whether courts may domesticate excluded judgments under common law principles.

¶7        MDHI argues that § 12-3252(B)(2) prevents an Arizona court from recognizing a foreign-country money judgment unless it originates from a country that either entered a treaty with the United States or Arizona or enacted a statute similar to the Act. Because the Netherlands applies principles grounded in Dutch caselaw to recognize foreign-country money judgments, rather than relying exclusively on a treaty or statute, MDHI asserts that the Act's reciprocity clause excludes the judgment here from recognition under the Act. In contrast, the Netherlands asserts, and the prior courts agreed, that judgment-recognition procedures established by caselaw that are similar to the Act satisfy the clause. *See State of the Netherlands*, 248 Ariz. at 539 ¶ 16. It therefore contends that because Dutch caselaw establishes recognition principles similar to the Act, the Act applies to the judgment here.

¶8        Resolution of this dispute turns on the meaning of "a reciprocal law" in § 12-3252(B)(2), an issue we review de novo. *See BMO Harris Bank, N.A. v. Wildwood Creek Ranch, LLC*, 236 Ariz. 363, 365 ¶ 7 (2015). When interpreting statutes, our goal is to effectuate the legislature's intent. *SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480 ¶ 8 (2018). To do so, "we interpret statutory language in view of the entire text, considering the context and related statutes on the same subject." *Molera v. Hobbs*, 250 Ariz. 13, 24 ¶ 34 (2020) (citation omitted) (internal alterations omitted). "If the language is clear and has only one reasonable meaning, we will apply that meaning." *Id.* If it yields more than one reasonable meaning, we apply secondary interpretive principles, such as examining "the statute's subject matter, historical background, effect and consequences, and spirit and purpose." *Id.* (quoting *Rosas v. Ariz. Dep't of Econ. Sec.*, 249 Ariz. 26, 28 ¶ 13 (2020)).

¶9        We reject MDHI's argument that "reciprocal" necessarily means a corresponding legislative enactment. The plain meaning of "reciprocal" does not itself direct the form of "law." *New York v. O'Neill*, 359 U.S. 1, 4 (1959), and *State v. Jordan*, 83 Ariz. 248, 251 (1958), relied on by MDHI, did not conclude otherwise by describing the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings as operative between states that had enacted the same or similar legislation.

The reciprocity clause in that act uses different language, *see* A.R.S. § 13-4093(A), and, regardless, neither case addressed the meaning of the reciprocity clause. *See O'Neill*, 359 U.S. at 4; *Jordan*, 83 Ariz. at 251. Whether § 12-3252(B)(2) requires a reciprocal legislative enactment depends entirely on the meaning of "law."

¶10 "Law" may have a broad or narrow meaning, depending on context and legislative intent. *See State ex rel. Conway v. Superior Court*, 60 Ariz. 69, 75–77 (1942), *overruled in part on other grounds by Adams v. Bolin*, 74 Ariz. 269, 275 (1952). The term can include "constitutions, statutes, the common law and the various [rules of court]" or "an act of the legislature only." *Id.* at 76; *see also Law*, Black's Law Dictionary (11th ed. 2019) (defining "law" in relevant part as "[t]he aggregate of legislation, judicial precedents, and accepted legal principles," or "[t]he set of rules or principles dealing with a specific area of a legal system"); *Law*, Webster's Third New International Dictionary (3d ed. 2002) (defining "law" in relevant part as an "ordinance, statute, resolution, rule [or] judicial decision," or the "common law"). Pinpointing whether the legislature intended "law" to have a broad meaning or a narrower one forms the crux of the dispute here.

¶11 Reading "law" in context, we agree with the Netherlands and the court of appeals that the legislature intended a broad meaning, which includes a foreign country's jurisprudence. *See State of the Netherlands*, 248 Ariz. at 540 ¶ 21. First, interpreting "law" as including caselaw, rules, regulations, and the like avoids rendering "adopted" in § 12-3252(B)(2) redundant to "enacted" and thus superfluous. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019) ("A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous."). Legislative bodies "enact" laws. *See Enact*, Black's Law Dictionary (11th ed. 2019) (defining "enact" as meaning "[t]o make into law by authoritative act; to pass"); *Cronin v. Sheldon*, 195 Ariz. 531, 537 ¶ 28 (1999) (acknowledging that "the legislature has the authority to enact laws"). If the legislature intended to restrict the meaning of "law" to legislative enactments, "adopted" would add nothing to § 12-3252(B)(2). But courts "adopt" rules, procedures, and common law principles, and executive agencies "adopt" rules and regulations. *See State of the Netherlands*, 248 Ariz. at 539–40 ¶ 19 (citing examples); *see also Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 242 Ariz. 108, 111 ¶ 15 (2017) ("We *adopt* the Restatement Second § 356(1) to test the enforceability of a stipulated damages provision." (emphasis added)); Ariz. Const. art. 6, § 2

("The supreme court shall sit in accordance with rules *adopted* by it." (emphasis added)). Interpreting "law" as including these authorities gives "adopted" a meaning distinct from "enacted."

¶12 MDHI briefly asserts that a treaty could also be "a reciprocal law." Countries, however, do not "enact" or "adopt" treaties but rather enter into such agreements. *Cf. Begay v. Miller*, 70 Ariz. 380, 385 (1950) (addressing Indian tribe's sovereign "power to enter into treaties with foreign nations"); U.S. Const. art. 1, § 10, cl. 3 ("No State shall, without the Consent of Congress . . . enter into any Agreement or Compact with . . . a foreign Power . . . .").

¶13 Second, the legislature did not include any language in § 12-3252(B)(2) restricting "law" to a legislative act or treaty. *See Collins v. Stockwell*, 137 Ariz. 416, 420 (1983) ("Courts will not read into a statute something that is not within the manifest intent of the Legislature as gathered from the statute itself."). The absence of restrictive language is particularly telling as the legislature was indisputably aware that "law" includes more than statutes. *See, e.g.*, *Conway*, 60 Ariz. at 75–76 (including the common law within the meaning of "law"); A.R.S. § 12-122 ("The superior court, in addition to the powers conferred by constitution, rule or statute, may proceed according to the common law."). And the legislature knew that Arizona historically recognized foreign-country money judgments under common law principles of comity. *See* Ariz. H.R. B. Summ. for S.B. 1447, 52d Leg., 1st Reg. Sess. (Mar. 18, 2015) (explaining that the Act "allows a court to give a foreign-country judgment greater effect than it is currently required to" and "outlines policy for listing today[']s generally-accepted policies and preserves the right for courts to recognize further bases").

¶14 Third, the focus of § 12-3252(B)(2) is on ensuring that a foreign country would recognize Arizona judgments under circumstances similar to those in the Act. No reason appears why the legislature would restrict the myriad types of "law" under which a foreign country may recognize an Arizona judgment. *See Molera*, 250 Ariz. at 24 ¶ 34 (providing that the "spirit and purpose" of the statute is a pertinent consideration to interpretation (quoting *Rosas*, 249 Ariz. at 28 ¶ 13)).

¶15 We are not persuaded by MDHI's contrary arguments. It contends that because § 12-3252(B)(2) refers to "*a reciprocal law*," only a single act, like a statute or treaty, can fulfill that requirement. But in our

statutes, words phrased singularly include the plural, so "a" does not necessarily mean one singular act. *See* A.R.S. § 1-214(B) ("Words in the singular number include the plural, and words in the plural number include the singular."). Mirroring the uniform act, the Act is phrased primarily in the singular throughout, and nothing indicates a legislative intent to exclude plural references. *See, e.g.*, § 12-3253(C)(3) (permitting a court to refuse recognition of a judgment "repugnant to *the* public policy of this state or of the United States" (emphasis added)). *But see* § 12-3253(E)(4) (providing that a foreign-country money judgment may not be refused for lack of personal jurisdiction if the defendant was a business entity "organized under the *laws* of[] the foreign country" (emphasis added)). For example, § 12-3252(A) provides that the Act applies to judgments that are final, conclusive, and enforceable "under *the* law of the foreign country," which, as in Arizona, may consist of a combination of legislation and court rules. *See, e.g.*, Ariz. R. Civ. P. 58 (entry of judgment); A.R.S. § 12-1611 (renewal of judgments).

¶16        MDHI also argues that "foreign country" in § 12-3252(B)(2) excludes foreign courts, meaning "a reciprocal law" that is "adopted or enacted" by that country must be a legislative enactment or treaty. The Act defines "foreign country" as "a government" other than the United States, its territories and possessions and any other government where "a judgment of that government's courts" is "subject to determination under the full faith and credit clause of the United States Constitution." *See* § 12-3251(1)(c). MDHI reasons that "government," and by extension "foreign country," necessarily excludes courts, otherwise the reference to "courts" would be redundant. It further points out that § 12-3253's references to "foreign court" rather than "foreign country" when describing circumstances in which judgments cannot or may not be recognized further demonstrates that the legislature intended to differentiate the terms. *See, e.g.*, § 12-3253(B)(2) ("A court may not recognize a foreign-country judgment if any of the following applies: . . . [t]he foreign court did not have personal jurisdiction over the defendant.").

¶17        Like the court of appeals, we are unpersuaded. *See State of the Netherlands*, 248 Ariz. at 539 ¶ 18. A "foreign country" means "a government," *see* § 12-3252(1), and governments include courts. *See Government*, Black's Law Dictionary (11th ed. 2019) (defining "government" in relevant part as meaning "the political organs of a country regardless of their function or level"). By referring to a "government's courts," § 12-3251(1)(c) recognizes that courts belong to government. Section

12-3251(2) also acknowledges that courts are part of government by defining a "foreign-country judgment" as one issued by "a court of a foreign country." The references to "foreign courts" in § 12-3253 do not suggest otherwise by identifying the part of government issuing the judgments at issue. Singling out the component of government that issues money judgments (i.e., courts) when discussing those judgments does not make the terms "government" and "courts" redundant if the former term includes the latter.

¶18        MDHI finally argues that interpreting "a reciprocal law" as including caselaw and court practices thwarts the legislature's intent to only recognize foreign-country money judgments from rendering countries that provide a "guarantee of reciprocity" through legislation. In support, MDHI relies on remarks during a senate committee hearing on Senate Bill 1447, which resulted in the Act. There, a representative of the Arizona Bankers Association, who requested the bill, stated the bill was prompted by Alberta, Canada's desire "to have a reciprocal arrangement with Arizona." He also stated that any country wanting a "reciprocal arrangement" with Arizona would qualify if it met the Act's requirements of "essentially" having court systems that parallel those in the United States. The bill's sponsoring senator added that three states had "agreements" with Alberta like ones the Act would authorize. Because Alberta recognizes foreign judgments under its Reciprocal Enforcement of Judgments Act, R.S.A. 2000, ch. R-6, MDHI asserts that the hearing remarks reflect the legislature's intent that only governments that "establish a mutual relationship with Arizona [through legislation] should be allowed to enjoy the [Act's] benefits."

¶19        Neither the language in § 12-3252(B)(2) nor the Act's limited legislative history supports MDHI's contention. As previously explained, nothing in § 12-3252(B)(2) restricts "a reciprocal law" to legislation. And neither the sponsoring senator nor the banking representative specified that any "reciprocal arrangement" or "agreement" had to take the form of legislation. Regardless, their remarks do not necessarily reflect the intent of the legislators who voted to enact Senate Bill 1447. *See Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 269–70 (1994) ("When seeking to ascertain the intent of legislators, courts normally give little or no weight to comments made at committee hearings by nonlegislators."); *City of Tucson v. Woods*, 191 Ariz. 523, 528 (App. 1997) ("[A] single member of the legislature is not able to testify regarding the intent of the legislature in passing a law.").

¶20          Significantly, Alberta's Reciprocal Enforcement of Judgments Act does not itself guarantee recognition of Arizona money judgments. That act provides that "[w]hen the Lieutenant Governor in Council is satisfied that reciprocal provision will be made by a jurisdiction" for enforcement of Alberta judgments, the Lieutenant Governor in Council "may by order declare it to be a reciprocating jurisdiction."   R.S.A. 2000, ch. R-6, § 8.   No limits are placed on the Lieutenant Governor in Council's discretion, and an order may be revoked in his or her discretion.   *Id.* Although the Lieutenant Governor in Council has recognized Arizona as a reciprocating jurisdiction, *see* Alberta Regulation 344/85, the act itself does not provide Arizona judgment creditors with the "guarantee" MDHI asserts is required by "a reciprocal law."

¶21          Our dissenting colleagues argue that "a reciprocal law" precludes caselaw because other states with broader reciprocity clauses consider caselaw, meaning our legislature must have intended a different result by using more restrictive language.   *See infra* ¶¶ 28, 33–36.   But even if other states' reciprocity clauses are broader than § 12-3252(B)(2), that circumstance has no bearing on our legislature's intent.   Nothing in the legislative history suggests the legislature was aware of other states' reciprocity clauses or intended to be more restrictive than other states. Any comparison with other states' reciprocity clauses to determine legislative intent is therefore of little use in interpreting the Act.   And notably, the legislative history reflects a legislative intent to permit greater recognition of foreign-country money judgments; no mention is made of an intent to be more restrictive than other states.   *See* Ariz. S.B. Summ. for S.B. 1447, 52d Leg., 1st Reg. Sess. (Mar. 25, 2015) (stating the Act is modeled on the uniform act, which "allows a court to give a foreign-country judgment greater effect than it is currently required to" and "outlines policy for listing today[']s generally-accepted policies and preserves the right for courts to recognize further bases").

¶22          In sum, "a reciprocal law related to foreign-country money judgments" means a foreign country's formally recognized and enforced rule that authorizes recognition of Arizona money judgments.   That rule can be established by a foreign country's caselaw.   To avoid exclusion under § 12-3252(B)(2), the law must recognize such judgments in a manner "similar" to the Act.   In essence, § 12-3252(B)(2) provides that an Arizona court will only recognize a foreign-country money judgment if it is assured that the rendering foreign country would recognize an Arizona judgment if circumstances were reversed.

**¶23** We now turn to the facts of this case. Article 431 of the Dutch Code of Civil Procedure, enacted by the Dutch Legislature, generally prohibits enforcement of foreign judgments but authorizes the Dutch courts to "deal[] with and settle[] de novo" such matters. Pursuant to this delegation, Dutch courts developed principles for recognizing foreign-country money judgments, which is necessary to later enforce such judgments. *See State of the Netherlands*, 248 Ariz. at 541 ¶ 24. MDHI does not contest that Dutch caselaw has recognized foreign-country money judgments, including United States judgments, for nearly a century under principles "similar to" the Act. *See id.* at 541–42 ¶¶ 24–26 (describing similarities and listing Dutch cases that recognized money judgments entered by United States courts). Although Dutch courts could cease applying such principles, just as countries could rescind reciprocal legislation or Alberta's Lieutenant Governor in Council could revoke recognition of Arizona judgments, their steadfast recognition of foreign-country money judgments constitutes "a reciprocal law" that is "similar to" the Act.

**¶24** The dissent argues that although formally adopted court procedures, evidentiary rules, and the like can be "similar to" the Act, caselaw cannot meet that requirement. *See infra* ¶ 27. It asserts that because the legislature did not enact the uniform act's "savings clause," which provides that foreign-country money judgments outside that act may still be recognized under common law principles, the Act prohibits recognizing foreign-country money judgments under the common law. *See infra* ¶¶ 29, 38. And because Dutch courts recognize foreign-country money judgments under principles developed in caselaw, the Dutch system, according to the dissent, is dissimilar to the Act. *See infra* ¶ 41.

**¶25** We find the dissent's reasoning flawed. Whether the lack of a savings clause in the Act evidences a legislative intent to prohibit recognition of all foreign-country money judgments under common law principles is not properly before us because we denied review of that issue in this case. Regardless, even if the legislature intended to entirely displace the common law for recognizing judgments in Arizona, it does not logically follow that foreign caselaw cannot establish a reciprocal law similar to the Act. The Act did not eschew the common law but codified "the most prevalent common law rules" for recognizing foreign-country money judgments. *See* Uniform Foreign-Country Money Judgments Recognition Act § 11 prefatory note (2005) (Unif. Law Comm'n prefatory note); *see also* § 12-3253 (codifying common law considerations like whether

the judgment emanated from a court of competent jurisdiction providing due process of law); *Alberta Sec. Comm'n*, 200 Ariz. at 545 ¶ 15 (citing common law principles later codified in the Act). The key inquiry is whether the foreign system similarly adheres to the Act's recognition rules. *See* Ariz. S.B. Summ. for S.B. 1447, 52d Leg., 1st Reg. Sess. (Mar. 25, 2015) ("Though the Act applies to judgment from any foreign court, it does not allow recognition of judgments rendered under a system not providing impartial tribunals or is incompatible with the requirements of due process of law."). As the court of appeals concluded, and we agree, the Dutch system meets that standard. *See State of the Netherlands*, 248 Ariz. at 541–42 ¶¶ 24–26.

## CONCLUSION

**¶26** We affirm the trial court and the court of appeals. Both parties ask for attorney fees pursuant to A.R.S. § 12-341.01(A). We award fees to the Netherlands as the prevailing party.

THE STATE OF THE NETHERLANDS v. MD HELICOPTERS, INC.
JUSTICE MONTGOMERY, joined by JUSTICE BOLICK
Concurring in part and Dissenting in part

MONTGOMERY, J., joined by BOLICK, J., concurring in part and dissenting in part:

¶27　　　　While it may be possible for a foreign court to adopt rules of procedure or evidence or some process that would satisfy the requirements of Arizona's Uniform Foreign-Country Money Judgment Act ("Act"), I respectfully dissent from the Majority's conclusion that Dutch caselaw satisfies the requirements in the matter before us.

¶28　　　　There are two main reasons for my dissent.　First, the Majority's conclusion that Dutch caselaw is similar enough to the Act does not adequately account for the significant differences between the Arizona legislature's version unanimously passed without amendment in 2015 and the Act as originally proposed in 2005 by the National Conference of Commissioners on Uniform State Laws ("NCCUSL Act").　*See* Unif. Foreign-Country Money Judg. Recog. Act (Unif. Law Comm'n 2005). Arizona's version has a more stringent reciprocity requirement than any other state in the country and omits specific language that would accommodate the recognition of foreign judgments based on common law principles.　While the latter difference does not necessarily mean that an Arizona court could not recognize a foreign judgment based on the common law — an issue we did not accept for review — it does bear on the comparison between the recognition of judgments pre-dating passage of the Act, the requirements of the Act, and Dutch caselaw today.

¶29　　　　Second, the Majority's conclusion does not account for the simple fact that, with passage of the Act, the Arizona legislature changed the means by which foreign judgments are recognized in Arizona from the common law approach to the statutory framework as set forth, whether exclusive or not.　Given that Dutch caselaw reflects a common law approach, the Dutch process is more like what Arizona utilized before the Act.　Therefore, the Dutch means for recognizing foreign judgments, being the same or similar to what we had before the Act, cannot be similar enough to the Act to warrant recognition of the judgment before us.　Otherwise, either the entire action by the legislature in passing the Act was without effect, leaving the means for recognizing a foreign judgment no different now than it was before, or the Majority's reading of the Act's reciprocity requirement of similarity renders it meaningless.

12

THE STATE OF THE NETHERLANDS v. MD HELICOPTERS, INC.
JUSTICE MONTGOMERY, joined by JUSTICE BOLICK
Concurring in part and Dissenting in part

¶30　　　　As an initial point, I concur with the Majority's interpretive principles, set forth at *supra* ¶¶ 8 and 9, as well as the balance of the Majority's refutation of points raised by MDHI. *See supra* ¶¶ 7, 9, 10, 12, 13, 16, 17, and 19. However, when considering the "subject matter, historical background, effect and consequences, and spirit and purpose" of the Act, *Molera v. Hobbs*, 250 Ariz. 13, 24 ¶ 34 (2020) (quoting *Rosas v. Ariz. Dep't of Econ. Sec.*, 246 Ariz. 26, 28 ¶ 13 (2020)), I depart from the Majority's conclusion. *Supra* ¶ 23.

¶31　　　　The Arizona legislature did not consider its version of the NCCUSL Act in a vacuum nor did it adopt the version approved by the NCCUSL in 2005. At the time Arizona passed its Act in 2015, twenty other states had adopted the NCCUSL Act or a version thereof[1] and the legislature specifically referenced the NCCUSL Act as a source for the introduced legislation. *See* Ariz. State Senate Fact Sheet for S.B. 1447, 52d Leg., 1st Reg. Sess. (Apr. 14, 2015). Instead of mirroring the NCCUSL Act, our legislature added a reciprocity requirement at A.R.S. § 12-3252 and declined to include Section 11 of the NCCUSL Act, entitled "Savings Clause." Arizona also declined to include the Uniformity of Interpretation provision at Section 10, which states that "[i]n applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it."

¶32　　　　With respect to the requirement for reciprocity, the prefatory note to the NCCUSL Act states:

> [T]he drafters revisited the decision made in the 1962 Act not to require reciprocity as a condition to recognition of the foreign-country money judgments covered by the Act. After much discussion, the drafters decided that the approach of the 1962 Act continues to be the wisest course with regard to this issue. While recognition of U.S. judgments continues to be problematic in a number of foreign countries, there was insufficient evidence to establish that a reciprocity requirement would have a greater effect on encouraging foreign recognition of U.S. judgments than does the approach

---

[1] The number is now up to twenty-five. https: //www.uniformlaws.org/ committees/community-home?CommunityKey=ae280c30-094a-4d8f-b722-8dcd614a8f3e

THE STATE OF THE NETHERLANDS v. MD HELICOPTERS, INC.
JUSTICE MONTGOMERY, joined by JUSTICE BOLICK
Concurring in part and Dissenting in part

taken by the Act. At the same time, the certainty and uniformity provided by the approach of the 1962 Act, and continued in this Act, creates a stability in this area that facilitates international commercial transactions.

¶33 Nonetheless, Arizona included a reciprocity requirement, as did six other states—Florida, Maine, Massachusetts, Ohio, Tennessee, and Texas. Fl. Stat. § 55.605(2)(g); Me. Rev. Stat. tit. 14, § 8505(2)(G); Mass. Gen. Laws Ch. 235 § 23A(7); Ohio Rev. Code § 2329.92(B); Tenn. Code Ann. § 26-6-204(c)(9); Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(c)(9).[2]

¶34 Of the states requiring reciprocity, Arizona is the only one that expressly requires "*a reciprocal law*." A.R.S. § 12-3252(B)(2) (emphasis added). Specifically, § 12-3252(B)(2) excludes recognition for judgments that "originate[] from a foreign country that has not adopted or enacted a reciprocal law related to foreign-country money judgments that is similar to this chapter." The other states only require that the foreign jurisdiction rendering the judgment "recognize" a judgment from that state. *See* Fl. Stat. § 55.605(2)(g) ("An out-of-country foreign judgment need not be recognized if . . . [t]he foreign jurisdiction where the judgment was rendered would not give recognition to a similar judgment rendered in this state"); Me. Rev. Stat. tit. 14, § 8505(2)(G) ("A foreign judgment need not be recognized if . . . [t]he foreign court rendering the judgment would not recognize a comparable judgment of this State."); Mass. Gen. Laws Ch. 235, § 23A(7) ("A foreign judgment shall not be recognized if . . . judgments of this state are not recognized in the courts of the foreign state."); Ohio Rev. Code § 2329.92(B) (providing that the court has the discretion to recognize judgments rendered "in a foreign country that does not have a procedure for recognizing judgments made by courts of other countries and their political subdivisions in its statutes, rules, or common law that is substantially similar to sections 2329.90 to 2329.94 of the Revised Code"); Tenn. Code Ann. § 26-6-204(c)(9) ("A court of this state need not recognize a foreign-country judgment if . . . [t]he foreign jurisdiction where the judgment was rendered would not give recognition to a similar judgment rendered in this state."); Tex. Civ. Prac. & Rem. Code Ann. § 36A.004(c)(9) (providing that a court *is not required to* recognize a foreign judgment if the jurisdiction that rendered it would not recognize a judgment from Texas) (emphasis added)).

---

[2] All cites to state statutes are to current versions, unless otherwise noted.

THE STATE OF THE NETHERLANDS v. MD HELICOPTERS, INC.
JUSTICE MONTGOMERY, joined by JUSTICE BOLICK
Concurring in part and Dissenting in part

¶35          Courts that have considered whether a foreign judgment is entitled to recognition in states with the different, broader recognition language have understandably focused on the foreign country's judicial process.   In *Reading Bates Construction Co. v. Baker Energy Resources Corp.*, the Court of Appeals of Texas relied on Canadian caselaw to find reciprocity.   976 S.W.2d 702, 710–11 (Tex. Ct. App. 1998).   Canadian caselaw sets forth five instances in which Canada would recognize a foreign judgment.   *Id.*   Because Texas law merely required that the foreign jurisdiction would "recognize" a Texas judgment, the court held that the Canadian judicial practice of recognizing foreign judgments was sufficient for reciprocity.   *Id.*   *See also Genujo Lok Beteiligungs GmbH v. Zorn*, 943 A.2d 573, 581 (Me. 2008) (finding reciprocity because "German courts would likely recognize a comparable judgment from Maine"); *Chabert v. Bacquié*, 694 So.2d 805, 815 (Fla. Dist. Ct. App. 1997) (requiring the party challenging recognition to establish that "a French court would refuse to recognize an American judgment against a non-French party sought to be enforced in a French court"); *McCord v. Jet Spray Int'l Corp.*, 874 F. Supp. 436, 439–40 (D. Mass. 1994) (holding that Belgian procedures amounted to "recognition" sufficient for reciprocity).

¶36          There is an obvious difference in language between requiring "a reciprocal law . . . similar to the Act" and merely calling for "recognition."   Yet, the Majority's approach, *see supra* ¶¶ 10–15, disregards that difference and gives Arizona's reciprocity provision, which demands the former, the same meaning as provisions in other states that only call for the latter.   The Majority's point that the legislative history of the Act does not reflect awareness of what other states were doing with respect to reciprocity is beside the point.   *See supra* ¶ 21.   We must give meaning to the words chosen by our legislature and our analysis should account for those choices accordingly.

¶37          Were we to apply a plain-meaning analysis and give effect to the unique language chosen by our legislature, this Court would not be the first to interpret a reciprocity requirement to render a result that might not necessarily align with the legislature's expectations.   For instance, Colorado courts originally interpreted a "foreign state" in its version of the Act so narrowly that it did not allow recognition of judgments from any other country.   *Milhoux v. Linder*, 902 P.2d 856, 859 (Colo. App. 1995) (reasoning that because Colorado law required a "reciprocal agreement"

THE STATE OF THE NETHERLANDS v. MD HELICOPTERS, INC.
JUSTICE MONTGOMERY, joined by JUSTICE BOLICK
Concurring in part and Dissenting in part

between the United States and a foreign country and no such agreement existed, no foreign judgments could be recognized under its version of the Act). Consequently, the court held that "the district court was not required by the Recognition Act to recognize the Belgian judgment." *Id.* at 860. In response, the Colorado legislature repealed the restrictive reciprocity requirement in 2008. *See Ledtroit Law v. Kim*, 360 P.3d 247, 254 n.1 (Colo. App. 2015) ("The Recognition Act has since been amended to eliminate the reciprocity requirement."). If the standard set out in A.R.S. § 12-3252 proves likewise unworkable, it is up to the legislature to rectify the consequence. *Orca Commc'ns Unlimited, LLC v. Noder*, 236 Ariz. 180, 182 ¶ 11 (2014) ("The choice of the appropriate wording rests with the Legislature, and the court may not substitute its judgment for that of the Legislature.") (quoting *City of Phoenix v. Butler*, 110 Ariz. 160, 162 (1973)). Similar to Colorado, Arizona can repeal and replace § 12-3252 to better achieve its goals if the legislature so desires.

¶38 Our legislature chose to omit the Savings Clause as proposed by the NCCUSL, which provides that "[t]his [act] does not prevent the recognition under principles of comity or otherwise of a foreign-country judgment not within the scope of this [act]." The following comment notes:

> Section 11 makes clear that no negative implication should be read from the fact that this Act does not provide for recognition of other foreign-country judgments. Rather, this Act simply does not address the issue of whether foreign-country judgments not within its scope . . . should be recognized. Courts are free to recognize those foreign-country judgments not within the scope of this Act under common law principles of comity or other applicable law.

Almost every state that has adopted the NCCUSL Act or a variant thereof has included a savings clause.[3] And as the majority notes, prior to 2015,

---

[3] Ala. Code § 6-9-260; Alaska Stat. § 09.30.150; Cal. Civ. Proc. Code § 1723; Colo. Rev. Stat. § 13-62-111; Conn. Gen. Stat. § 50a-37; Del. Code Ann. tit. 10, § 4807; D.C. Code § 15-371; Ga. Code Ann. § 9-12-119; Haw. Rev. Stat. § 658F-10; Idaho Code § 10-1411; 735 Ill. Comp. Stat. Ann. 5/12-671; Ind. Code § 34-54-12-9; Iowa Code § 626B.111; Me. Stat. tit. 14 § 8508; Md. Code Ann., Cts. & Jud. Proc. § 10-707; Mich. Comp. Laws § 691.1141; Minn. Stat.

THE STATE OF THE NETHERLANDS v. MD HELICOPTERS, INC.
JUSTICE MONTGOMERY, joined by JUSTICE BOLICK
Concurring in part and Dissenting in part

the only means available for securing recognition of a foreign judgment in Arizona was provided by the common law. *See supra* ¶ 5. Therefore, by omitting a savings clause to retain the use of common law principles, the legislature afforded parties a different (and much narrower) means by which a foreign judgment can be recognized in Arizona. The Majority's cite to legislative history for the proposition that the legislature intended to actually give courts the ability to give greater recognition to foreign judgments, *see supra* ¶ 13, underscores the problem with omitting a Savings Clause or similar language and is not a basis to read into the statute what the legislature failed to include.

**¶39** While I agree with the Majority's conclusion that the term "adopted" is rendered "superfluous" if caselaw and court practices cannot amount to "a reciprocal law," *see supra* ¶ 11, I disagree with the ultimate conclusion that Dutch court practices and caselaw as they are today satisfy the Act's requirements. *Supra* ¶ 23. The apparent source of authority for Dutch courts to consider foreign judgments, Article 431 of the Dutch Civil Code of Procedure, is inapplicable. *Id.* Article 431 explicitly refers to enforcement of judgments, not recognition. Article 431(1) states that "no decision rendered by foreign courts . . . can be *enforced* within The Netherlands." (emphasis added). Article 431(2) is equally unavailing, stating that "[d]isputes may be litigated again in the Dutch courts." Relitigating an underlying dispute involving enforcement is hardly similar to the statutory process established by the Act for recognition of a judgment rendered after a dispute has been litigated.

**¶40** As for the particular Dutch court process for considering foreign judgments, the Netherlands Supreme Court refers to it as "disguised exequatur proceedings." Dutch Supreme Court, 26 September 2014, ECLI:NL:HR:2014:2838 (*Gazprombank*). Even if there may be a circumstance where a foreign country's caselaw could constitute "a reciprocal law," a process characterized as "disguised" is hardly similar to the explicit and formal process of recognizing a foreign judgment as afforded by Arizona's Act.

---

§ 548.63; Mo. Stat. Ann. § 511.787; Mont. Code Ann. § 25-9-608; Nev. Rev. Stat. § 17.820; N.J. Stat. Ann. § 2A:49A-16.11; N.M. Stat. Ann. § 39-4D-10; N.Y. C.P.L.R. § 5307; N.C. Gen. Stat. § 1C-1852; Okla. Stat. tit. 12, § 12-718.11; Or. Rev. Stat. § 24.395; 42 Pa. Cons. Stat. § 22008; Utah Code Ann. § 78B-5-460; Va. Code Ann. § 8.01-465.13:10; Wash. Rev. Code § 6.40A.090.

THE STATE OF THE NETHERLANDS v. MD HELICOPTERS, INC.
JUSTICE MONTGOMERY, joined by JUSTICE BOLICK
Concurring in part and Dissenting in part

**¶41** What the Dutch system is similar to is what Arizona relied on prior to the 2015 Act, namely application of the common law to determine whether to recognize a foreign judgment. *See supra* ¶ 5. With the passage of the Arizona Act, though, the legislature instituted a different process for recognizing foreign judgments that, by omitting the Savings Clause, does not reference the use of common law principles. Therefore, the Dutch system, reflecting an approach "similar" to the method Arizona previously utilized for foreign judgment recognition, cannot be similar to the system now in place. To conclude otherwise renders the process of passing the Act as drafted by the legislature, as well as the resulting distinctive and narrow terms, superfluous.

**¶42** Where the legislature has omitted language that may make it easier to achieve a policy objective or added language that may make a declared policy objective more challenging to achieve or outright frustrate it, they need to correct it. If the ultimate consequence of our forbearance is more careful deliberation in the crafting of legislation to begin with, so much the better for the people of Arizona.

**¶43** I would remand to the court of appeals for a determination of whether the Act is the exclusive means by which a foreign money judgment can be recognized.